FIDELITY INSURANCE, TRUST & SAFE-DEPOSIT CO. et al v. NOR-FOLK & W. R. CO. (VIRGINIA & T. COAL & IRON CO., Intervener).

(Circuit Court, E. D. Virginia. March 6, 1896.)

EQUITABLE LIENS—RAILROAD FREIGHTS.

The V. Co., which owned coal and iron lands near the line of the N. Ry. Co., agreed with that company to construct, at its own expense, a branch line and spurs, extending from the line of the railway to its mines, and to convey the same to the railway company, in consideration of the agreement of the latter to pay to it the earnings of such branch line on coal transported, at the rate of 10 cents per ton, until the payments should amount to the cost of the construction of the branch. This agreement was made while the V. Co. was in possession of the branch road and spurs. It was duly performed by the V. Co., and the railway company paid the earnings as agreed, until it passed into the hands of a receiver,

appointed in a suit to foreclose a mortgage, made before the agreement with the V. Co., and covering after-acquired property, at which time a large balance remained due on the cost of the construction of the branch road, and a considerable amount of freight had been earned by the railway company, and not paid over. Other freight was afterwards earned by the receiver on the branch road, but the earnings of the division of the railroad to which the branch belonged were insufficient to pay its operating expenses. *Held*, that the agreement between the V. Co. and the N. Ry. Co. created an equitable charge upon the earnings of the branch, which did not become subject to the general mortgage upon the conveyance of the branch to the railway company, and that the amount of such earnings should be paid over by the receiver to the V. Co.

This was a suit by the Fidelity Insurance, Trust & Safe-Deposit Company and the Mercantile Trust Company against the Norfolk & Western Railroad Company for the foreclosure of a mortgage. A receiver was appointed, and the Virginia & Tennessee Coal & Iron Company intervened, asking the payment of certain moneys to it by the receiver.

From the petition of the intervener it appears that it was the owner of valuable coal and iron lands in Wise county, Va., near the line of the defendant's railroad; that in 1892 it entered into contracts with the railroad company to have a branch road and spurs of about four miles in length constructed, extending from the main line to its coal and iron mines; that it stipulated that it would acquire, and would convey, in fee simple, free of all incumbrances, to the railroad company, for this purpose, a strip of land 60 feet wide for the branch road and its spurs, and additional widths of land for sidings; that it would construct upon this ground all the necessary grading, masonry, and other preparation for the roadbed, and would convey and deliver this work to the railroad company, free from constructors' liens and all other liabilities; that it would furnish all the moneys necessary for the purchase by the railroad company of cross-ties, switches, rails, fastenings, and other material for these main and spur tracks, and for laying the same, and would deliver and convey the whole free of liens to the railroad company, which was to have the exclusive right to operate and control the same, and to extend them at its option; and the railroad company was to keep the track of the branch and spur tracks in good working order and repair. These stipulations were all fulfilled on the part of the interveners, the coal and iron company; and the branch road and spurs were constructed, equipped, delivered, and conveyed by the coal and iron company to the railroad company as stipulated. On the part of the railroad company it was agreed that, in consideration of the conveyance to it of the main and spur roads contemplated by the contract, in fee simple, free from all liens and incumbrances, it would pay to the coal and iron company all the earnings of this branch road and spurs on coal transported on it from the mines upon them, which were fixed at the rate of 10 cents per gross ton transported, until these payments should amount in aggregate to the cost of the branch road and its spurs. The branch road and spurs under consideration were completed in 1893. Their cost to the coal and iron company was $38,973.52. The railroad company, from the time the branch road and its spurs began to be operated in 1893, complied with the terms of its contract by paying to the coal and iron company its earnings of 10 cents per gross ton. The property of the Norfolk & Western Railroad Company went into the hands of receivers of this court on the 6th day of February, 1895, under an order of this court in this cause entered on that day. At the time at which the receivers took charge of the Norfolk & Western Railroad, there had been paid on the freights due to the coal and iron company, the sum of $16,427.70, leaving $22,546.32 still due; and there had accrued, besides, an aggregate of freights due to the coal and iron company, amounting to $5,728.60. Since the receivers took charge of the Norfolk & Western Railroad and of the branch road and spurs in question, the earnings of the latter, on 108,012 tons of freight passing over them, have been $10,801.20, up to the end of August, 1895, no part of which earnings has been

paid to the coal and iron company. When the branch road and its spurs under consideration were conveyed to the Norfolk & Western Railroad Company in 1893, all the roads and property of that company were incumbered by mortgages amounting in the aggregate to $19,056,000. The company is in default in the payment of the later installments of interest accrued on the bonds to secure which these mortgages were given· and the current earnings of the division of the Norfolk. & Western Railroad. with which the branch road and its spurs under consideration immediately connect, are not sufficient to pay its operating expenses. In this condition of things the receivers submit to the court for its instruction the question whether the earnings of the branch road and its spurs, conveyed to the Norfolk & Western Railroad Company by contract as set forth, are to be paid as stipulated in the contract of conveyance, or whether its obligation to pay these earnings is junior and of inferior dignity to the debts which rested upon the property of the railroad company at the time when the branch road and its spurs built by the coal and iron company were conveyed by it to the railroad company.

Daniel Trigg and Hobart Miller, for Virginia & T. Coal & Iron Co.
Samuel Dickson, for Fidelity Co. ·
Wm. W. Old, for Mercantile Trust Co.

HUGHES, District Judge (after stating the facts). It is to be observed that the coal and iron company, at the time of its contracts with the Norfolk & Western Railroad Company, was in possession of the branch road and its spurs which are the subject of this inquiry. It had purchased the strips of land on which they were located. It had constructed the grading, bridging, masonry, and kindred work, and it had furnished the money for purchasing the rails, cross-ties, spikes, and so forth, which were used in fitting the branch road and spurs for use. While in possession it contracted to convey the whole in fee simple, free of incumbrances, to the railroad company, in consideration of a stipulation on its part to pay the earnings of the branch road and its spurs, at the rate of 10 cents per gross ton transported over them, to the coal and iron company, until the cost to it of the branch road and its spurs should be reimbursed in full. It was after this contract was made that the coal and iron company conveyed the branch road and its spurs to the railroad company. It will be admitted that the coal and iron company was liberal almost beyond example in constructing a branch road out and out, costing many thousands of dollars, at its own expense, and then conveying it to the railroad company outright on an agreement to accept the prospective earnings of the branch road for the whole outlay. On this state of facts, I think the case at bar is governed by the rulings of the supreme court of the United States, in the cases of Ketchum v. St. Louis, 101. U. S. 306, and U. S. v. New Orleans R. R., 12 Wall. 362, and the numerous cases cited in each of them. In these cases the distinction between mortgages by formal deeds and equitable mortgages is emphasized. One of the rulings in the case of Ketchum v. St. Louis is stated in one of the headnotes, as follows:

"A party may, by agreement, create a charge or claim in the nature of a lien on real as well as on personal property whereof he is the owner or in possession, which a court of equity will enforce against him, and volunteers or claimants under him with notice of the agreement."

One of the cases cited by the learned justice who delivered the opinion of the supreme court in that case was that of In re Strand Music Hall Co., 3 De Gex, J. & S. 147, in which Lord Justice Turner said:

"There can be no doubt that it was intended by these agreements to create a charge upon the property of the company. * * * Where this court is satisfied that it was intended to create a charge, and that the parties who intended to create it had the power to do so, it will give effect to the intention, notwithstanding any mistake which may have occurred in the attempt to effect it."

The learned justice also cited from Jones on Mortgages the following passage and the numerous authorities which support it:

"An agreement of a company to set apart specific earnings or property in the hands of a third person to meet the interest or principal of its bonds creates an equitable lien or charge."

In the case of U. S. v. New Orleans R. R., supra, the court said:

"A mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagee's hands. * * * It only attaches to such interest as the mortgagor acquires; and if he purchase property, and give a mortgage for the purchase money, the deed which he receives and the mortgage which he gives are regarded as one transaction, and no general lien impending over him, whether in the shape of a general mortgage or judgment or recognizance, can displace such mortgage for purchase money."

In the case of a lease of land for an annual rent, it will not be contended that a transfer of the lease to a company whose property is under a heavy mortgage, would give priority to the mortgagee over the right of the lessor to his rents. The transfer carries the lease cum onere, which goes to the purchaser charged with the contract for rents running with the land. The Norfolk & Western Railroad Company expressly stipulated, in advance of receiving a conveyance of the branch road and its spurs, that their freight earnings should be paid to the vendor from whom it received them, until the purchase price should be fully discharged. This charge upon the earnings was fixed before the transfer of the branch roads, and as the consideration for the transfer. There was no necessity for an actual mortgage of these earnings, because the coal and iron company, its agents and assigns, were the owners of the coal and iron intended to be shipped; and a formal mortgage would have given them no better control of the earnings than the coal and iron company had and would continue to have as miners and shippers of the coal. I will sign a decree directing the receivers to carry out the contract under consideration, and to pay the earnings of the branch road and its spurs to the petitioner in compliance with the stipulations of the railroad company.