HENRY C. PITNEY, JOHN R. EMERY, ALFRED REED,
FREDERIC W. STEVENS AND MARTIN P.
GREY, VICE-CHANCELLORS.

------

EUGENE F. DALY

*v.*

THE NEW YORK AND GREENWOOD LAKE RAILWAY
COMPANY et al.

1. The transfer of a bond and mortgage belonging to an estate, when made, in pursuance of an order of court, by the executor removed by the court to a new executor appointed in his place, is sufficient to convey the equitable title thereto, although the transfer was a mere delivery, without formal assignment.

595

2. A mortgage on land given by the purchaser to secure the price conveys a legal title, superior to the interest acquired through previous mortgages given by the purchaser, and covering after-acquired property.

3. This superiority is not lost by neglect to record the purchase-money mortgage, for the statute requiring recording is for the protection of subsequent mortgagees only.

Heard on pleadings and proofs.

The object of the bill is to foreclose a mortgage on land given by Henry C. Spaulding to John Sands Howell, dated June 17th, 1872, to secure the sum of $4,650 in four years, further secured by the bond of the mortgagor. The complainant claims to be the assignee of this bond and mortgage. They were given as part of the consideration money of the conveyance by Howell, the mortgagee, and others to Spaulding of the tract covered by the mortgage, containing ten and twenty-five hundredths acres of land situate at Secaucus, in Hudson county.

By deed of the same date, June 17th, 1872, Spaulding conveyed nine hundred and four thousandths of an acre, part of the premises, to the Montclair Railway Company. This was a narrow strip upon which it was proposed to build, and upon which a section of the railway of that company was afterwards built.

The deed to Spaulding was acknowledged by a part of the grantors on the 17th of June, by another part on the 19th and by another part on the 21st of June, 1872.

The mortgage was acknowledged by Spaulding on the 28th of June and the deed for the strip to the railway company was acknowledged on the same day.

The two deeds were recorded on the 2d of July, 1872.

The mortgage from Spaulding to Howell sought to be foreclosed was not recorded until the 10th of July, eight days after the record of the deed from Spaulding to the railway company.

Spaulding was one of the directors of the railway company, was its superintendent and purchasing agent, and in the purchase acted entirely as the agent and trustee of the railway company. He held the title to the nine acres and a fraction of the whole tract not conveyed to the railway company, in trust for it.

The whole transaction was carried through with the full knowledge and consent, previously obtained, of all the officers of the railway company, so that the railway company had full and complete notice of the mortgage to Howell for part of the consideration money.

At the time of this transaction the railway was under a first mortgage to Marcus L. Ward and Abram S. Hewitt, as trustees for certain bondholders. That mortgage was dated the 1st of September, 1870, and recorded on the 2d of September, 1870, in book of deeds for Hudson county. The description of the premises covered by it is as follows:

"All and singular the line of railway known and to be known as the Montclair railway, as the same is being and shall be constructed from the line of the State of New York, at or near Greenwood lake, to the Hudson river, also the branches thereof, * * * including all the railways, ways, rights of way and depot grounds or other lands, all tracks, bridges, viaducts, culverts, fences and other structures &c., * * * *and all real and personal property* held or acquired or *hereafter* to be held or acquired by the said company, its successors or assigns, for use in connection with the aforesaid railway and branches of the party of the first part, or with any part thereof, or with the business of the same, * * * and also all franchises connected with or relating to the aforesaid railway and branches or to the construction, maintenance or use of the same."

A second mortgage was given by the railway company to Mr. Hewitt alone, as trustee, using the same description of the premises as above set out, on the 1st of November, 1871, and recorded on the 15th of January, 1872, to secure another issue of bonds.

The second mortgage was duly foreclosed and the property purchased by and conveyed to Mr. Hewitt, as trustee, by master's deed dated January 7th, 1875.

The first mortgage was duly foreclosed and conveyed by master's deed to Marcus L. Ward and Abram S. Hewitt, trustees, September 27th, 1875. Ward and Hewitt conveyed by deed dated November 29th, 1875, to the Montclair and Greenwood Lake Railway Company, a new organization, and this second railway company mortgaged to George Walker and Amzi Dodd, trustees, by deed of trust dated December 1st, 1875, all

its lands and property of every kind. This mortgage was foreclosed and the property purchased by and conveyed to Abram S. Hewitt, Cyrus W. Field and John B. Dumont by master's deed dated October 5th, 1878, and Hewitt, Field and Dumont conveyed by deed dated November 5th, 1878, to the New York and Greenwood Lake Railway Company, the defendant herein. Neither Howell nor his personal representatives were made parties to either of these foreclosure proceedings.

Receivers were also appointed of this railway company, after the conveyance of Spaulding to it and before the first foreclosure, and they also conveyed to Hewitt as trustee; but their conveyance did not cover any land in Hudson county, and counsel for the railway company relied entirely upon the mortgages of 1870 and 1871.

The principal question is whether the foreclosure of the mortgages of 1870 and 1871 had the effect of divesting the lien of the complainant's mortgage upon the strip of nine hundred and four thousandths acres constituting a part of the railroad bed.

Another question was raised as to the standing of the complainant, Daly, in this court. Howell, the mortgagee, died not long after the giving of this mortgage, leaving a will which was offered and admitted to probate in the city of New York, on the 28th of January, 1873. Letters testamentary were issued by the surrogate of New York city to Henry K. Van Siclen and William Joyce, executors named therein, both of the State of New York. Subsequently, in 1879, proceedings were had to remove both these executors, with the result that both executors were removed by decree of the surrogate, dated October 13th, 1879, and their letters testamentary were superseded. Subsequently an order was made in the supreme court of the city and State of New York, on the 17th of October, 1879, appointing Edward C. Sheehy trustee under the will of Howell, in the place and stead of Van Siclen and Joyce, and it was ordered that upon service of a copy of the order upon Van Siclen and Joyce they should pay over, assign, transfer and deliver to Sheehy all the money, securities, assets and property of every kind and description in their hands or possession belonging to

the estate of Howell.   Under that order demand was made by Sheehy upon Van Siclen and Joyce for the assets of the Howell estate, and as a part of those assets Van Siclen and Joyce handed to Sheehy the bond and mortgage here in question, but did not execute any formal assignment of it.   Sheehy then duly assigned the mortgage to the complainant, Daly.

*Mr. Joseph Anderson*, for the complainant.

*Mr. Cortlandt Parker, Jr.*, for the New York and Greenwood Lake Railway Company.

PITNEY, V. C.

The first question is as to whether the complainant has standing in equity as the owner of this bond and mortgage.

There can be no doubt that the interest in and control of them by the original executors of the mortgagee were divested and ended by the decree of the surrogate of New York superseding them.   And it is equally clear that Mr. Sheehy, the new trustee, was entitled to the possession and control and vested with the equitable interest in them in trust for the beneficiaries under the will, by the decree of the New York supreme court.   And it seems to be well settled at this day in New Jersey—in fact, familiar and common learning—that a mere delivery of a bond and mortgage, with intention to pass the title, upon a proper consideration, will vest the equitable interest in the person to whom it is so delivered.   This is the substance of the ruling by Mr. Justice Drake, speaking for the supreme court, in the case of *Hutchings* v. *Lowe, 1 Gr. 246;* and in the same direction is what was said by Master Wilson in *Morris Canal Co.* v. *Fisher, 1 Stock. 667* (at *p. 686*).   The same doctrine was declared by Chancellor Runyon in *Kamena* v. *Huelbig, 8 C. E. Gr. 78* (at *p. 80*), where he says : " This assignment was in writing, but had it been by the mere handing over of the bond and mortgage, it would have been sufficient."   And Master Weart, in *Galway* v. *Fullerton, 2 C. E. Gr. 389* (at *p. 394*), states the same doctrine, citing authorities from New York and elsewhere.   Chan-

cellor Runyon reiterates it in *Harris* v. *Cook, 1 Stew. Eq. 345*, and again in *Denton* v. *Cole, 3 Stew. Eq. 244*, citing with approval *Galway* v. *Fullerton, supra.*

It has always been held that a mortgage will, in equity, follow the debt which it was given to secure, wherever that debt is well assigned or transferred, without any formal assignment of the mortgage. *Green* v. *Hart, 1 Johns. 580*, on appeal from the chancellor.

I think the equitable title of the complainant in the bond and mortgage here in question is fully established.

The next question is as to whether or not the present railway company's claim of title under mortgages prior in date to that of the complainant, gives it the better standing in this court.

It is to be observed that at the time the two mortgages under which the railway company claims, to wit, in 1870 and 1871, were executed and recorded, the title in this land had not been vested in the railway company, and it must claim under the description of land *"thereafter to be acquired."* There can be no doubt that, under that clause, a title in equity, of greater or less value, was made to the purchasing trustees, and by them to the present defendant corporation, of this after-acquired property. The question is whether the railway company took it free and clear of the encumbrance of complainant's mortgage.

That the mortgagor, the original Montclair Railway Company, took the property with full notice of complainant's mortgage, there can be no doubt. As between complainant and the first railway company, the complainant's right is indisputable. Notwithstanding that the first railway company had notice of the complainant's mortgage, it was competent for it, under our recording acts, to give a title to the premises free and clear of complainant's mortgage. As to that portion of it, nine hundred and four thousandths of an acre, which was actually conveyed by Spaulding to the railway company by deed recorded prior to the recording of complainant's mortgage, no conveyance was made by that railway company subsequent to the making of complainant's mortgage. Such conveyance was made by mortgages prior to the date of the complainant's mortgage.

Now, the language of the recording act then and still in force, which applies to the present case, is as follows :

"Every deed of mortgage &c. which shall have been made and executed after the first day of January, 1821, or shall hereafter be made and executed, shall be void and of no effect against a *subsequent* judgment creditor, or *bona fide* purchaser or mortgagee for a valuable consideration, not having notice thereof, unless such mortgage shall be acknowledged and proved according to law &c. and recorded or lodged for that purpose with the clerk of the .county " &c.

It thus appears that the recording act operates entirely in favor of *subsequent* mortgagees and *bona fide* purchasers. The case abundantly shows that the mortgages under which the defendants claim were given before the railroad was built, and presumably before all of the money was advanced upon the bonds secured by those mortgages.

The case does not show how much, if any, money was so advanced prior to the conveyance by Spaulding to the railway company, but it may be presumed that some of the bonds were negotiated prior to that time.

Counsel for complainant contended, with much ingenuity and strength, that his mortgage must be a subsisting lien, for the simple reason that the prior mortgages were not within the terms of the recording act, and that there were no conveyances by the railway company, grantee of Spaulding, after the conveyance to it, and so there was not, and could not be, any person occupying the position, as against him, of a *bona fide* purchaser for value without notice.

But, without relying upon that point alone, I think that, according to the first principles of justice as administered in a court of equity, the complainant's mortgage must be accorded priority over the Hewitt mortgages.

The general rule seems to be that the holder of a mortgage, who claims by its terms that it is a lien upon after-acquired property, takes such property subject to all liens upon it between the parties.

This was distinctly decided by the supreme court of the

United States in the case of *United States* v. *New Orleans Railroad Co., 12 Wall. 362,* where Mr. Justice Bradley, speaking for the court, uses this language : " This, we apprehend, is an erroneous view of the doctrine by which after-acquired property is made to serve the uses of a mortgage. That doctrine is intended to subserve the purposes of justice, and not injustice. Such an application of it as is sought by the appellants would often result in gross injustice. A mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands. If that property is already subject to mortgages or other liens, the general mortgage does not displace them, though they may be junior to it in point of time. It only attaches to such interest as the mortgagor acquired, and if he purchase property and give a mortgage for the purchase-money, the deed which he receives and the mortgage which he gives are regarded as one transaction, and no general lien impending over him, whether in the shape of a general mortgage, or judgment, or recognizance, can displace such mortgage for purchase-money. And in such cases a failure to register the mortgage for purchase-money makes no difference. It does not come within the reason of the registry laws. These laws are intended for the protection of subsequent, not prior, purchasers and creditors."

The doctrine of this case was adopted and applied by the court of errors and appeals in *Williamson* v. *New Jersey Southern Railroad Co., 2 Stew. Eq. 311* (at *p. 317*), where the case last cited was cited with approval.

Both of these cases I deem to be in point. In the case in *12 Wall. 362,* the railroad company had made a mortgage which covered all the company's property of every kind with a stipulation to include all future-acquired property, and had purchased a lot of rolling stock subsequent to the date of the mortgage, and given back a consideration mortgage for it to the vendor which had not been recorded, and the fact of its existence was unknown to the bondholders under the first mortgage. In deciding it Mr. Justice Bradley calls attention to the distinction between

that case and *Galveston Railroad Co.* v. *Cowdrey, 11 Wall. 459,* much relied upon by defendant's counsel in this cause.

In *Williamson* v. *New Jersey Southern Railroad Co.,* lands came to a railway company which were subject to a mechanics' lien which had not yet been filed or recorded, so that the title of the mortgagees intervened between the time when the occurrences out of which the mechanics' lien arose took place and the time that the lien itself was filed and perfected, and it was held that the mechanics' lien prevailed over the mortgage.

The legal title to these premises has never been dealt with and never passed to the present railway company. It is familiar learning, found in all the cases, that a mortgage upon after-acquired property cannot rise higher than a contract to convey the title to that property when acquired, and a suit for its enforcement is, in effect, a suit for the specific performance of a contract. *Holroyd* v. *Marshall, 10 H. L. Cas. 191; Pennock* v. *Coe, 23 How. 117; Smithurst* v. *Edmunds, 1 McCart. 408,* which is the leading case in New Jersey on that subject, and has been followed in numerous cases since, including *Williamson* v. *New Jersey Southern Railroad Co., supra.*

The title, then, of the railway company in this case is purely an equitable one. The title of the complainant herein is a legal title. It was an actual reconveyance of the property to Mr. Howell. That legal title was not disturbed by the prior record of the conveyance by Spaulding to the Montclair Railway Company, because its officers had notice of it, and that company was really itself the mortgagor, being in equity a purchaser from Howell and his co-grantors. *Garves* v. *Coutant, 4 Stew. Eq. 763.* Howell, then, not only held the legal title, but his equity was prior, in point of time, to that of the railway company, and, on plain principles, must prevail.

I will advise a decree accordingly.