HUGH CUMMINGS *et als.* *vs.* CONSOLIDATED MINERAL WATER COMPANY.

PROVIDENCE—APRIL 7, 1905.

PRESENT: Douglas, C. J., Dubois, J.

(1)  *Mechanics' Liens.   Mortgages of After-Acquired Property.   Priority.*

December 17, 1901, stockholders of the X. Co. voted to issue bonds secured by mortgage upon all its real and personal estate.   January 1, 1902, the X. Co. conveyed to the Y. Co. as trustee, by way of mortgage to secure payment of such bonds, all of its assets and property, and also all "property which shall at any time be owned by or acquired by said mortgagor or its successors."   Certain clauses of said mortgage were as follows:   IX.   "Any real estate hereafter acquired by said mortgagor may be by it mortgaged either for a portion of the purchase money thereof or for the purpose of erecting improvements thereon, and such mortgage on such newly acquired real estate shall have priority over the lien hereby created on such newly acquired real estate and the improvements thereon."

XIII. "The mortgagor will not suffer any mechanics' liens upon any part of the property hereby conveyed, the lien of which could or might be held to be prior to the lien hereby created."

January 14, 1902, the X. Co. acquired by deed a lot of land known as the "Fletcher" lot, and entered into contracts for the erection of a building thereon, and work was commenced in February, 1902. About March 21, 1902, the X. Co. conveyed this lot to the Y. Co. in trust, to hold the same under the terms set forth in the first trust mortgage:—

*Held,* that, under clause IX of the trust mortgage, authority was conferred by the mortgagee upon the mortgagor to mortgage its after-acquired real estate for the purpose of erecting improvements thereon.

*Held,* further, that a mechanic's lien was a statutory *quasi* mortgage founded upon consent.

*Held,* further, that it was intended that the lien of the trust mortgage attaching to such after-acquired real estate should be postponed to liens for the purchase price and the cost of improvements.

*Held,* further, that the provisions of clauses IX and XIII were not inconsistent, the former relating to after-acquired property, and the latter to property subject to the mortgage.

*Held,* further, that petitioners were entitled to priority over the mortgage.

PETITIONS FOR MECHANICS' LIENS. Heard on exceptions to report of master. Exceptions overruled.

DUBOIS, J. These are petitions brought for the enforcement of mechanics' and material-men's liens, under the provisions of Gen. Laws R. I., cap. 206, against a certain building erected by them and the land under and adjoining the same, at the corner of Harris and Sims avenues, in the city of Providence. The respondents, Consolidated Mineral Water Company, and Industrial Trust Company, corporations, are respectively the owner and the mortgagee and grantee of the premises. The causes, which had been consolidated by decree, were afterwards referred to Nathan W. Littlefield, Esq., master in chancery, for examination and report. The master has filed his report, to which all parties have taken exception, and their exceptions are the subject of this consideration.

It appears that on December 17, 1901, the stockholders of Consolidated Mineral Water Company, at a meeting called for that purpose, voted to issue bonds of the company, secured by a mortgage upon all its real and personal estate, for the aggregate sum of seventy-five thousand dollars, in such form and on such terms as should be approved by the board of directors, and

also that a mortgage of the real and personal estate of said company be made, to secure said bonds, in such form as should be approved by the board of directors. At a meeting of the board of directors held on the same day a form of bond was approved by them, and it was voted to issue one hundred and fifty bonds of the company for the sum of five hundred dollars each. A draft of the mortgage to secure the bonds of the company was read and approved by said board December 30, 1901, and the president and treasurer of the company were authorized to execute the same for and in behalf of the company. On the first day of January, 1902, Consolidated Mineral Water Company made a conveyance to Industrial Trust Company, as trustee, by way of a mortgage, to secure the payment of a series of bonds to the amount of $75,000, conveying " assets of the spring water, soda, and mineral water business heretofore carried on by" the corporations, individuals, and firms therein named. " Also, all the assets, property, and evidences of property however described and wherever situated which shall at any time be owned by or acquired by said mortgagor or its successors, or which now are or shall hereafter come into the hands or possession of any other person or persons, corporation or corporations, for the use or benefit of said mortgagor or its successors." Also certain parcels of real estate, specifically described, situated in the State of Maine. The terms, conditions, and trusts upon which the property was conveyed to the trustee are set forth in the mortgage in fifteen articles, of which only number XIII and a portion of number IX are material to the present inquiry.

Among other things it is provided by article IX that " Any real estate, hereafter acquired by said mortgagor, may be by it mortgaged, either for a portion of the purchase money thereof or for the purpose of erecting improvements thereon, and such mortgage on such newly acquired real estate shall have priority over the lien hereby created on such newly acquired real estate and the improvements thereon," and by

" Article XIII. The said mortgagor shall and will from time to time pay and discharge all taxes, assessments, and all other charges lawfully imposed upon the property hereby con-

veyed, or any part thereof, and will not suffer any mechanic's laborer's, or other statutory liens upon any part of the property hereby conveyed, or intended so to be, the lien or liens of which might or could be held to be prior to the lien hereby created; and said mortgagor shall and will not suffer any matter or thing whatsoever whereby the lien of this indenture might or could be impaired until the said bonds hereby secured with all interest thereon, according to the terms thereof, shall be paid and satisfied. In case the said mortgagor refuses or neglects to pay or discharge any taxes or assessments or other charges lawfully imposed upon the property hereby conveyed, the trustee may, at its own discretion, pay them, or any of them, and the amount so paid, the said mortgagor agrees forthwith to repay to said trustee on demand, with interest from the day of payment, and any money so paid by the said trustee, with interest thereon, shall be deemed to be secured by these presents and shall be collectible hereunder; and shall constitute a lien prior and superior to the lien of the bonds hereby secured."

This trust mortgage was duly recorded January 2, 1902, in the office of the recorder of deeds in Providence.

By deed, dated January 14, 1902, Consolidated Mineral Water Company acquired from Charles Fletcher a vacant lot of land, the same being the real estate previously described. After the acquisition of this "Fletcher lot," Consolidated Mineral Water Company entered into several contracts for the erection and equipment of a building thereon, in which to carry on its business and manufacture its goods; and work thereunder was commenced in February, 1902. The liens under consideration are all for work performed and materials furnished in erecting a large brick building upon said premises under these contracts. On or about March 21, 1902, in compliance with its covenant for further assurance, Consolidated Mineral Water Company conveyed to Industrial Trust Company the "Fletcher lot," in trust, however, to hold the same under the terms set forth in the first trust mortgage. This deed also was duly recorded in the office of the recorder of deeds in said Providence, April 9, 1902. The master found that as regards these lienors, the trust mortgage was an unrecorded mortgage at the time when

the liens attached, and that it was therefore null and void as against them, and that they are entitled to the amount of their liens. This conclusion was arrived at through a series of findings more or less objectionable to the parties, and to which specific exceptions have been taken, as follows:

The petitioners have excepted,—*First.* To the finding of the master: "That the directors of Consolidated Mineral Water Company had authority to make the mortgage of January 1st, 1902, and to include in the property conveyed thereby all real and personal estate which should thereafter be acquired by the company during the existence of the mortgage. That the insertion in said mortgage of the clause relating to after-acquired property was fairly within the power of the directors and that the mortgage is not invalid as to after-acquired property."

*Second.* To his finding: "That the petitioners are not entitled in equity to the benefit of the clauses contained in said mortgage relating to the payment of all liens by Consolidated Mineral Water Company and to the payment of mechanics' and other liens by the mortgagee in extinguishing such liens."

*Third.* To the finding: "That the Consolidated Mineral Water Company was not estopped from issuing bonds secured by its mortgage to the Industrial Trust Company, by reason of the existence of the mechanics' liens upon the Fletcher lot, nor was the Industrial Trust Company estopped from turning over to the Consolidated Mineral Water Company the bonds secured by the mortgage by reason of the provisions of the mortgage relating to mechanics' liens above-mentioned and the attaching of such mechanics' liens, and that the Consolidated Mineral Water Company could sell or pledge any of its said bonds not theretofore disposed of after the time when work was commenced upon the Fletcher lot, and that the lien of the mortgage held by the trustee for the bondholders is superior to that of the petitioners as to such bonds."

*Fourth.* To this finding: "That when the title to the Fletcher lot passed to the Consolidated Mineral Water Company, by virtue of this clause relating to after-acquired property, the Industrial Trust Company acquired an interest in the

property itself, and as this interest began January 14, 1902, and the commencement of the construction of the building was in February, 1902, its equitable interest antedates the petitioners' liens."

Consolidated Mineral Water Company, respondent, takes the following exceptions to the findings of the master, contained in his said report:

*First.* To the finding: "Which gives the liens of the petitioners priority over the mortgage to secure the bonds of the defendant."

*Second.* To the finding: "That the lienors were not bound by the record of the mortgage which antedated the acquirement of the property by the defendant."

*Third.* To the finding: "That the recording of the mortgage, prior to the acquisition of the property, is not constructive notice to a subsequent purchaser or encumbrancer."

*Fourth.* To the finding: "That an encumbrancer or purchaser is not bound to examine the records prior to the time when the owner acquired the property,"—and

*Fifth.* To the finding: "That, as regards these lienors, the mortgage in question was an unrecorded mortgage at the time when the lien attached, and therefore null and void as against the lienors."

And Industrial Trust Company, respondent, unites with its co-respondent in excepting to the findings set forth in its second and fifth exceptions, and further excepts to the refusal of the master to find that, as regards the complainants, the trust deed or mortgage from Consolidated Mineral Water Company to Industrial Trust Company as trustee to secure bondholders, dated the first day of January, A. D. 1902, and recorded in the office of the recorder of deeds in the city of Providence on the second day of January, A. D. 1902, created a lien on the "Fletcher lot," so called, in this respondent for benefit of the holders of said bonds, superior to the lien of the petitioners.

We are of the opinion that the first finding of the master is fully warranted by the law and the facts. The purpose of the mortgage was to secure the payment of a series of bonds apparently issued partly to acquire and equip a plant wherein

the business of the corporation would be carried on and partly to furnish capital with which to conduct its business. The Fletcher lot was purchased as a site for its manufactory. There is no evidence tending to show that the directors were not acting in good faith in including, as a part of the security, property to be afterwards acquired by the company, nor that the mortgagee obtained thereby unnecessary or excessive security for the benefit of the bondholders. Like provisions as to after-acquired property are not unusual in mortgages of this kind, as appears by numerous reported cases.

"In general it may be stated that as an incident to the authority of the directors to contract debts and obligations in the course of the ordinary business of the corporation, they have authority to pledge and convey the real or personal estate of the corporation as security for the payment of the same." 10 Cyc. 765 d.

"Whenever a corporation has power to mortgage its property generally, it has, in the absence of any restraining statute, power to mortgage property to be by it thereafter acquired, in like manner as a natural person has. Such mortgages are indeed invalid at law, it being a fundamental maxim of the common law that a man can not grant or convey what he does not own. But it has long been settled, both in England and this country, that courts of equity will uphold and give effect to such mortgages, in so far as they do not conflict with the rights of subsequent creditors and purchasers without notice." *Ibid*, 1187 i and cases cited.

The second finding must also be sustained so far as it relates to the provisions of article XIII. The provisions of that article were evidently intended and inserted for the protection of the mortgagee as trustee for the bondholders only.

The third finding, "that the lien of the mortgage held by the trustee for the bondholders is superior to that of the petitioners as to such bonds," is unobjectionable. The petitioners' liens are proceedings *in rem* and solely against a certain building and the land under and adjoining it; they have nothing to do with the bonds.

The master's fourth finding is correct. Such a mortgage is

effectual to charge the property, when acquired, with an equitable lien, or to create an equitable title in it in favor of the mortgagee against the mortgagor. *Williams* v. *Briggs*, 11 R. I. 476, at p. 478.

The first exception of the respondent Consolidated Mineral Water Company must be overruled.

(1)    The liens of the petitioners are entitled to priority over the mortgage under the provisions of article IX of the mortgage itself. Necessary authority is there conferred by the mortgagee upon the mortgagor to mortgage its after-acquired real estate for the purpose of erecting improvements thereon; but the execution of such a mortgage is not made a condition precedent to the improvement itself; on the contrary, the improvement is made the basis and reason for the mortgage. Such authority also confers power to mortgage the land as security for payment of the improvement. The general object and intention of such a clause is to be looked at, and not the strict letter of it, in cases of this kind. *Miller* v. *Chance*, 3 Edwards Ch. 399; *Magraw* v. *Pennock*, 2 Grant's Cases, Pa. 89; *Cumming* v. *Williamson*, I Sandf. Ch. N. Y. 17.

Thus the mortgage might be made to a stranger for money or might be given to the improvers to secure claims for work done and materials furnished in making the improvements. The authority to cause improvements to be erected upon the land upon which the mortgage might attach is necessarily implied from the terms of said permission. Under this authority improvements have been erected, upon the after-acquired real estate, for which payment has not been made, nor has any formal mortgage been executed for their payment or security. But a mechanic's lien is a statutory *quasi* mortgage founded upon consent. *Briggs* v. *Titus*, 13 R. I. 138; *Blackmar* v. *Sharp*, 23 R. I. 412, at p. 417. It is not acquired by an adverse proceeding after the debt has been incurred, but it accrues as the debt accrues, being incident to the improvement, and therefore the owner of the estate to which it attaches consents to it when he consents to the improvement. *Briggs* v. *Titus*, *supra*.

Consolidated Mineral Water Company thus consented to the

lien when it consented to the improvement, and Industrial Trust Company consented, by authorizing improvements upon after-acquired real estate, in the article referred to. In this clause the parties look forward to the future purchase of land by the mortgagor and its improvement by structures to be erected thereon and to the payment of the purchase price and improvements by mortgage, and to the priority of that mortgage over the lien created by the trust mortgage.

It is clear that it is intended that the lien of the trust mortgage, attaching to such after-acquired real estate, shall be postponed to liens for the purchase price and the cost of its improvements. Such land is to be taken subject to those encumbrances. The priority of liens thus recognized pursues a logical order. First, the vendor's lien for unpaid purchase money; second, the mechanics' and material-men's liens for improvements; and third, the lien created by the first mortgage.

The provisions of article IX and XIII are harmonious; those of article XIII relate to property subject to the mortgage; while that of article IX relates to after-acquired real estate and how it may be encumbered in priority to the lien of the trust mortgage.

The prohibition against liens in article XIII and the right to mortgage in priority in article IX are not incompatible; a mortgage is a lien. A vendor has a lien for unpaid purchase money, and mechanics and material-men have liens for improvements added to the land. A mortgage lien is preferable because it is more simple, definite, and less expensive to enforce. The purpose of the contemplated mortgage is expressed to be in part payment of purchase money, that is, in effect, to prevent or extinguish a vendor's lien which of itself would have priority, or for the purpose of erecting improvements thereon, in avoidance or satisfaction of the liens of mechanics or material-men which claim priority. A neglect or refusal to mortgage and pay the purchase money would not postpone the lien of the vendor to that of the trust mortgage, and the neglect or refusal to mortgage and pay for the improvements erected on the land ought not to be allowed to defeat the liens incident to such improvements. Such liens are not hostile to the trust mortgage.

They are contemplated by it. The permission to improve after-acquired real estate, at its own expense, can not be revoked after the improvements have been erected.

The doctrine by which after-acquired property is made to serve the uses of a mortgage is intended to subserve the purposes of justice and not injustice. "A mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands. If that property is already subject to mortgages or other liens, the general mortgage does not displace them, though they may be junior to it in point of time. It only attaches to such interest as the mortgagor acquires; and if he purchase property and give a mortgage for the purchase-money, the deed which he receives and the mortgage which he gives are regarded as one transaction, and no general lien impending over him, whether in the shape of a general mortgage, or judgment, or recognizance, can displace such mortgage for purchase money. And in such cases a failure to register the mortgage for purchase money makes no difference. It does not come within the reason of the registry laws. These laws are intended for the protection of subsequent, not prior, purchasers and creditors." *United States* v. *New Orleans Railroad,* 12 Wall. 362, at p. 364.

As, in our opinion, the decision of these cases depends entirely upon the interpretation to be placed upon the latter portion of article IX of the trust mortgage, it is unnecessary, and therefore inexpedient, to determine whether the effect of recording the mortgage was to give constructive notice to all persons that an equitable lien thereby created might attach to real estate thereafter to be acquired but not described for identification therein.

A decree will be entered according to this opinion.

*Henry W. Hayes, Cooke & Angell, Albert A. Baker, Richard E. Lyman, and Christopher M. Lee,* for petitioners.

*Van Slyck & Mumford and Barney & Lee,* for respondents.