### CITIZENS STATE BANK & TRUST CO., Plaintiff,

v.

**MOTOR SERVICE CO., INC., aka The Motor Service Company, aka The Motor Service Company, Inc., aka Motor Service Company, aka Motor Service Co.; L & M Automotive, Inc.; First National Bank and Trust Company of Salina, Kansas, aka Sunflower Bank; Diversified Automotive Distributors, Inc.; United States of America, acting By and Through the Internal Revenue Service; and Saline County, Kansas, Defendants.**

No. 94–4118–SAC.

United States District Court, D. Kansas.

Oct. 20, 1995.

John Sherman, Svaty, Sherman & Hoffman, Ellsworth, KS, for plaintiff.

Norman R. Kelly, Norton, Wasserman, Jones & Kelly, Salina, KS, Howard S. Levitan, Howard S. Levitan P.A., Prairie Village, KS, Steven D. Horak, Overland Park, KS, Tanya S. Wilson, Office of United States Attorney, Topeka, KS, and Kathy M. Davis, Kansas Department of Revenue, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

This is a foreclosure action brought by the plaintiff, Citizens State Bank & Trust, seeking to foreclose its mortgage on real estate and its security interest in personal property of the defendants, Motor Service Co., Inc., and L & M Automotive, Inc. The United States of America, acting by and through the Internal Revenue Service claims a lien for unpaid taxes on the real and personal property of the Motor Service Co. and L & M Automotive. Diversified Automotive Distributors, Inc. claims a lien on the inventory the Motor Service Co. and L & M Automotive.

In the pretrial order, the parties appear to stipulate to most of the essential facts of this case. Apparently the remaining dispute pits the United States against Diversified Automotive Distributors [1] in a contest for priority in the inventory of the Motor Service Co. and L & M Automotive.

This case comes before the court upon the United States' motion for summary judgment (Dk. 25). The United States argues under the 45-day rule, see 26 U.S.C. § 6323(c),[2] it

---

1. According to Diversified Automotive Distributors' brief, it was purchased by General Parts, Inc. in the fall of 1994. For simplicity, the court will simply refer to the defendant as Diversified Automotive Distributors.

2. In *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), the Supreme Court explained the operation of § 6323(c):

> Section 6323(c) provides that a tax lien is subordinate to a security interest which came into existence after the tax lien filing but which is a "commercial transactions financing agreement ... protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation." §§ 6323(c)(1)(A)(i) and (c)(1)(B). (A commercial transactions financing agreement includes accounts receivable and inventory, § 6323(c)(2)(C).)

The local law applicable is, in 49 States and the District of Columbia, the Uniform Commercial Code (UCC); and 26 U.S.C. § 6323, as amended by the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, § 101, 80 Stat. 1125, was in large part adopted in order to "conform the lien provisions of the internal revenue laws to the concepts developed in [the] Uniform Commercial Code." H.R.Rep. No. 1884, 89th Cong., 2d Sess., 1 (1966).

Under the UCC, a perfected security interest is superior to a judgment lien creditor's claim in the property, see UCC §§ 9–301, 9–312. Perfection of a security interest in inventory or accounts receivable occurs only when a financing statement is filed, UCC § 9–302, and when it has attached. U.C.C. § 9–303(1). Attachment requires an agreement, value given by the secured party, and that the debtor have rights in the collateral. UCC § 9–204. Thus when a security agreement exists and filing has occurred prior to the filing of a tax lien to secure advances made after the tax filing, perfection is, at the least, achieved when the secured party makes the advance. When that occurs after the tax lien has been filed, § 6323(d) protects the secured party from the federal tax lien if the advance is made not later than 45 days after the filing of the tax lien or

has a first lien priority on all inventory acquired by Motor Service Co. and L & M Automotive since the 46th day after the filing of the tax liens against those entities. Diversified Automotive Distributors filed a four page response, noting that it has continued to supply Motor Service Co. with inventory, thereby enabling Motor Service Co. to remain in business. Diversified Automotive Distributors apparently contends that because it has a perfected purchase money security interest in inventory, see K.S.A. 84–9–31£, and because all of the parties, including the United States, understood that it was an ongoing supplier keeping Motor Service Co. in business, it would be unfair to give the United States priority. Diversified Automotive Distributors' brief states that "[t]o rule other than to give DIVERSIFIED/GPI its priority would destroy the reality of the relationship understood by all parties including the United States."

### Uncontroverted Facts

Diversified Automotive Distributors claims first priority to the inventory of Motor Service Co. and L & M Automotive based upon a subordination agreement between itself and Citizens State Bank & Trust Co. and a security agreement dated August 11, 1989. Pursuant to the subordination agreement between Diversified Automotive Distributors and Citizens State Bank, Diversified Automotive Distributors was granted a priority position ahead of Citizens on the first $75,000.00 of inventory belonging to Motor Service Co. and L & M Automotive. Diversified Automotive Distributors perfected its security agreement against Motor Service Co. and L & M Automotive by the filing of financing statements with the Kansas Secretary of State on November 17, 1989, UCC Nos. 1504709 and 1504710, respectively. Diversified Automotive Distributors is, and has been since 1989, a supplier of inventory for sale in the ordinary course of business to Motor Service Co. and L & M on a monthly billing basis. Diversified Automotive Distributors required Motor Service Co. and L & M Automotive to pay for the inventory purchased

from it in each calendar month by the 10th of the following month. Diversified Automotive Distributors apparently claims that it has a purchase money security interest in the inventory.

The United States claims lien priority based upon the filing dates of its tax liens against Motor Service Co. and L & M Automotive, Inc. The United States' tax liens against Motor Service Co. were perfected as follows:

Lien No. 489208546 is the Office of the Register of Deeds in Saline county, Salina, Kansas, in Book 153, Page 322 in the amount of $29,433.04 on September 16, 1992. Lien No. 489208548 in the Office of the Secretary of State for the State of Kansas, Topeka, Kansas UCC No. 1835876 in the amount of $29,433.04 on September 22, 1992.

The United States' tax liens against L & M Automotive, Inc. were perfected as follows:

Lien No. 489200102 in the Office of the Register of Deeds in Saline County, Salina, Kansas, in Book 151, Page 744 in the amount of $27,499.78 on January 9, 1992. Lien No. 489200102 in the Office of the Secretary of State for the States of Kansas, Topeka, Kansas UCC No. 1755268 in the amount of $27,499.78 on January 14, 1992.

The federal liens are valid and existing liens of the United States. The balance due and owing the United States on the federal tax liens from Motor Service Co. as of February 15, 1995, was $53,836.18. Interest and penalties accrue at approximately $12.40 per day. The balance due and owing the United States on the federal tax liens from L & M Automotive as of February 15, 1995, was $39,749.50. The interest and penalties accrue at approximately $8.91 per day.

The United States, Internal Revenue Service, claims it is entitled to a first and prior lien on all inventory and accounts receivable acquired by Motor Service Co. and L & M Automotive after the 45th day after the filing

upon receipt of actual notice of the tax lien filing, whichever is sooner.
436 U.S. at 257 n. 22, 98 S.Ct. at 1790 n. 22. *See Shawnee State Bank v. United States,* 735

F.2d 308 (8th Cir.1984) (explaining operation of 45-day safe harbor period).

of the federal tax liens pursuant to 26 U.S.C. §§ 6321, 6322 and 6323.

### Analysis

Because neither party cited the authority relevant for determining the priority of the competing creditors, the court believes that the United States' motion is not ripe for consideration. By implication, Diversified Automotive Distributors contends that its purchase money security interest in inventory has priority over the United States' tax lien. The United States' memorandum in support of its motion for summary judgment does not address the impact, if any, of such a possibility. The United States' motion rests solely on the conclusion that under the 45–day rule, it has priority.

In *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978) the Supreme Court stated:

> [T]he Code specifically subordinates tax liens to the interests of certain others in the property, generally including those with a perfected security interest in the property. For example, the Code and established decisional principles subordinate the tax lien to perfected security interests arising before the filing of the tax lien, to certain perfected security interests in certain collateral, including inventory, arising after the tax lien filing when pursuant to a security agreement entered into before the filing, and to collateral which is the subject of a purchase-money mortgage regardless of whether the agreement was entered into before or after filing of the tax lien. [FN23]

---

23. Decisional law has long established that a purchase-money mortgagee's interest in the mortgaged property is superior to antecedent liens prior in time, *see United States v. New Orleans R. Co.*, 12 Wall. 362, 20 L.Ed. 434 (1871), and, therefore, a federal tax lien is subordinate to a purchase-money mortgagee's interest notwithstanding that the agreement is made and the security interest arises after notice of the tax lien. The purchase-money mortgage priority is based upon recognition that the mortgagee's interest merely reflects his contribution of property to the taxpayer's estate and therefore does not prejudice creditors who are prior in time.

In enacting the Federal Tax Lien Act of 1966, Congress intended to preserve this priority, H.R.Rep. No. 1884, 89th Cong., 2d Sess., 4

(1966), and the IRS has since formally accepted that position. Rev. Rul. 68–57, 68–1 Cum.Bull. 553; see also IRS General Counsel's Op. No. 13–60, 7 CCH 1961 Stand.Fed.Tax Rep. P 6307 (1960).

436 U.S. at 257–258 n. 23, 98 S.Ct. at 1791 n. 23 (footnotes omitted). *See First Interstate Bank of Utah, N.A. v. I.R.S.*, 930 F.2d 1521, 1523 (10th Cir.1991) ("The general proposition is that a security interest based on the extension of purchase money defeats a previously filed federal tax lien.").

In light of the fact that the party's briefs fail to adequately address the issues necessary to resolve the pending dispositive motion, the court instructs the parties to file additional briefs addressing the following issues:

1. Does Diversified Automotive Distributors have a purchase money security interest in the inventory of Motor Service Co. and L & M Automotive?

2. If Diversified Automotive Distributors does not have a purchase money security interest in the inventory of Motor Service Co., why doesn't the United States have priority over Diversified Automotive Distributors under the 45–day rule?

3. If Diversified Automotive Distributors does have a purchase money security interest in the inventory of Motor Service Co., why doesn't it have priority over the United States' tax liens?

The United States shall file its response within 10 days of the date of this memorandum and order. Diversified Automotive Distributors shall file its response within 10 days of the date the United States files its response.

IT IS THEREFORE ORDERED that the court finds that the United States' motion for summary judgment (Dk. 25) is not ripe for consideration.

IT IS FURTHER ORDERED that the parties shall file their response briefs as set forth in the body of this opinion. The court will issue a ruling on the United States' motion for summary judgment following

completion of the briefing schedule by the parties.