## UNITED STATES *v.* NEW ORLEANS RAILROAD.

1. A mortgage by a railroad company covering all future acquired property, attaches only to such interest therein as the company acquires, subject to any liens under which it comes into the company's possession.
2. If the company purchase property subject to a lien for the purchase-money, such lien is not displaced by the general mortgage.
3. If the company give a mortgage for the purchase-money at the time of the purchase, such mortgage, whether registered or not, has precedence of the general mortgage.
4. This rule fails, however, when the property purchased is annexed to a subject already covered by the general mortgage, and becomes a part thereof; as when iron rails are laid down and become a part of the railroad.

APPEAL from the Circuit Court for the District of Kentucky.

This was a suit instituted by the United States, as the holder of a number of the first and second mortgage bonds of the New Orleans and Ohio Railroad Company, against that company, and one Trimble, trustee of them, to foreclose the mortgages given to secure the said bonds. These mortgages were executed in 1858 and 1860, respectively, and covered all the company's property of every kind, with a stipulation to include also all future acquired property. The trustee of the mortgages and several individual bondholders were made parties, and the bill contained proper allegations as to the impracticability of making all of them parties. After a final decree of foreclosure and sale, and whilst the execution was in the hands of the marshal, it transpired that a portion of the rolling stock, consisting of two locomotives and ten cars, had been sold to the railroad

company by the United States in 1866, and that, simultaneously with the sale, the company gave to the United States a bond for the purchase-money, wherein it was stipulated that the latter should have a lien therefor upon the property sold, and that the company should not sell it or part with it until payment of the price, without the written consent of the United States.   Hereupon the respective solicitors of all the parties, complainant and defendant, directed the marshal, in writing, not to sell the said locomotives and cars. The rest of the property was sold, but brought less than the amount of the mortgage bonds.

The parties, then, by their respective solicitors, filed a written statement of the facts in relation to said locomotives and cars, adding to what is above stated the further fact that the bond given for the purchase-money thereof was not recorded, and that its contents were unknown to all the bondholders of the railroad company except Mr. Trimble, the trustee of the mortgages.   Upon this statement the question whether the United States had a superior equity in this property to that of the bondholders under the mortgages was submitted to the court for its decision, and the court decided that they had a superior equity, and made a decree to that effect.   This was the decree appealed from.

*Messrs. Carlisle and McPherson, for the appellant:*

1. The court below has undertaken to adjudicate the question of property as between the United States on one part and the other bondholders on the other part, without any pleadings upon which the decree could be based, and without any such proceedings, however irregular, as would answer the purpose of proper pleadings and process, by giving the bondholders an opportunity to litigate the question.   It has thus been acting in a case where it had no jurisdiction.

2. It has been settled in this court that a railroad company can mortgage not only its acquisitions *in esse* or *presenti*, but those *in posse* or *futuro* as well.   A mortgage of property to be acquired, was enforced to the displacement of a vendor's lien in the recent case of *Galveston Railroad Com-*

*pany* v. *Cowdrey.*\*   The mortgage here was of that sort; and on the authority of that case should displace the lien of the United States.

*Mr. B. H. Bristow, Solicitor-General, and Mr. C. H. Hill, Assistant Attorney-General,* contra.

Mr. Justice BRADLEY delivered the opinion of the court.

The appellants contend, first, that the court had no authority to make the decision; that the proceeding was wholly irregular, without proper pleadings, and *coram non judice.* This objection hardly comes with a good grace from the appellants, who all joined in submitting the question to the court. But the jurisdiction was undoubted. A court of equity, in a suit for the foreclosure of a mortgage, clearly has cognizance of all questions relating to priority of lien on the property in litigation, as between the parties to the suit and those whom they lawfully represent. The mode in which the jurisdiction shall be exercised is not so much a matter of substance as of form. Ordinarily a reference to a master before the final decree would be the formal method to pursue, but where, from oversight or other cause, this has been omitted, the parties may certainly agree (as was done here) to submit the matter to the court, upon a statement of facts, after the decree.

The appellants contend, in the next place, that the decision upon the facts was erroneous; that the mortgages, being prior in date to the bond given for the purchase-money of these locomotives and cars, and being expressly made to include after-acquired property, attached to the property as soon as it was purchased, and displaced any junior lien. This, we apprehend, is an erroneous view of the doctrine by which after-acquired property is made to serve the uses of a mortgage. That doctrine is intended to subserve the purposes of justice, and not injustice. Such an application of it as is sought by the appellants would often result in

---

\* 11 Wallace, 459.

gross injustice. A mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands. If that property is already subject to mortgages or other liens, the general mortgage does not displace them, though they may be junior to it in point of time. It only attaches to such interest as the mortgagor acquires; and if he purchase property and give a mortgage for the purchase-money, the deed which he receives and the mortgage which he gives are regarded as one transaction, and no general lien impending over him, whether in the shape of a general mortgage, or judgment, or recognizance, can displace such mortgage for purchase-money. And in such cases a failure to register the mortgage for purchase-money makes no difference. It does not come within the reason of the registry laws. These laws are intended for the protection of subsequent, not prior, purchasers and creditors.

Had the property sold by the government to the railroad company been rails, as in the case of the *Galveston Railroad Company* v. *Cowdrey*, or any other material which became affixed to and a part of the principal thing, the result would have been different. But being loose property, susceptible of separate ownership and separate liens, such liens, if binding on the railroad company itself, are unaffected by a prior general mortgage given by the company, and paramount thereto.

In the case before us, the United States, at the time of making the sale, reserved a lien on the property, and imposed a condition of non-alienation until the price should be paid. Taken all together the transaction amounts to a transfer *sub modo*, and the lien must be regarded as attaching to the property itself, and as paramount to any other liens arising from the prior act of the company.

DECREE AFFIRMED.