FIRST NATIONAL BANK OF WATERLOO y. ELMORE ET AL.

1. **Mortgage:** VALIDITY: NATIONAL BANKS.   While the taking of a mortgage by a national bank, to secure a loan made at the time, is by implication prohibited by section 5136 of the Revised Statutes of the United States, a mortgage so taken is not void, but may be enforced, the penalty for violation of the statute being enforceable only by the government by a revocation of the bank's charter.   Following *Union National Bank v. Matthews*, 98 U. S., 621.

2. ———: MERGER: PURCHASE OF LEGAL TITLE.   The purchase by a mortgagee of the legal title to the property covered by the mortgage will not operate as a merger and extinguish the lien of his mortgage unless such is his intention, and the intention will not be presumed where his interest requires that the mortgage should remain in force.

3. ———: FIXTURES: MACHINERY.   Where a chattel mortgage was executed upon certain machinery which was afterward placed in a mill, and it appeared that the machinery was but slightly attached to the building and could be removed without injury to the realty, it was held that such mortgage was valid as against a prior mortgage of the real estate.

4. **Mechanic's Lien:** MANNER OF ENFORCING.   Mechanic's liens which were filed before the taking effect of chapter 100, laws of 1876, and which are first liens upon the building but subject to others upon the realty, can only be enforced by a sale and removal of the building or structure.

*Appeal from Floyd Circuit Court.*

TUESDAY, DECEMBER 9.

THE plaintiff filed a sworn petition in equity, alleging that it is a corporation organized and doing business under an act of congress; that on the 1st day of December, 1874, the defendant Alexander Elmore made and delivered to the cashier of plaintiff his promissory note for $500, payable on demand; that March 3d, 1875, Alexander Elmore made and delivered to the cashier of plaintiff his other promissory note in writing for $213.80, payable two months after date; that, in order to secure the payment of said notes and any further sum that defendant might then or thereafter owe plaintiff, the defendants Alexander and Adaline J. Elmore executed and delivered

to the cashier of plaintiff their mortgage upon certain real estate described, embracing the water power of defendants, with grist mill, dwelling house, cooper shop, and all buildings and appurtenances thereunto belonging. Judgment is prayed for the amount of the notes and $65 attorney's fees, and for a decree foreclosing said mortgage and establishing its priority over the liens of the defendants.

The defendants Alexander Elmore and Adaline J. Elmore answered, denying that there is any sum due plaintiff over $682. The Union Savings Bank of Cedar Rapids answered, alleging that the defendants Alexander and Adaline J. Elmore are indebted to it in the sum of $1,800, on a promissory note executed to the cashier of defendant November 4th, 1875, secured by mortgage of the same date, on the same property described in the plaintiff's petition. This answer further alleges that the mortgage from the Elmores to the plaintiff was taken in violation of sections 5136 and 5137 of the Revised Statutes of the United States, relating to national banks. The defendant prays judgment against Alexander and Adaline Elmore for the amount of said notes and $150 attorney's fee, and that the mortgage be foreclosed and decreed superior to plaintiff's claim, and that plaintiff's mortgage be declared void and inoperative as a lien.

The defendant Otis A. Pray filed his answer alleging that in November, 1875, he sold and delivered to the defendants Elmores a bill of machinery for a flouring mill, amounting to the sum of $5,000, which was placed in the mill situated on the premises described in the plaintiff's petition; that before the machinery was placed in said mill the defendants Alexander and Adaline Elmore gave defendant a mortgage, to secure the purchase money thereof, on said machinery, in the sum of $5,000, which was duly recorded December 18th, 1875. This defendant also alleges that the mortgage to plaintiff was taken in violation of the statutes of the United States as to national banking, and is void. Defendant prays that his lien on the machinery be decreed to be the senior lien.

The defendants James Leffell & Co. answered, alleging that on the 12th day of September, 1872, they filed a mechanic's

First National Bank of Waterloo v. Elmore.

lien upon the real estate described in plaintiff's petition to secure the payment of $517; that on the 21st day of June, 1873, they recovered judgment against said Elmores thereon for the sum of $482.48, and obtained the establishment of their mechanic's lien for the amount of said judgment, no part of which has been paid. These defendants pray that their lien be decreed prior and paramount to the lien of plaintiff's mortgage.

Subsequently to the filing of these answers the plaintiff filed an amendment to its petition alleging that the mortgage in question was taken by it to secure it for previous advances, and that at the time of its execution the defendant Elmore was owing to plaintiff the amount of said notes.

Afterward the defendant C. E. Holt was made a party defendant on his motion, and filed his answer alleging the invalidity of the plaintiff's mortgage. This defendant also alleged that he was the owner by assignment of the following claims:

1. A mechanic's lien of Farnham & Lovejoy, filed February 25th, 1876, for lumber and materials furnished the defendants Elmores, from April 17th to October 16th, 1875, for the erection of a grist mill on the premises described in plaintiff's petition, amounting to $1,993.08.

2. A mechanic's lien of William Branton, filed March 4th, 1876, for labor performed for the defendants Elmores, as a mechanic, upon a grist mill situated on said premises, from October 27th, 1875, to February 10th, 1877, amounting to $77.70.

3. A mechanic's lien of William J. Little, filed May 6th, 1876, for work as a mechanic for Elmores on said mill, from November 19th, 1875, to February 9th, 1876, amounting to $79.39.

4. A mechanic's lien of A. G. & J. S. Merrill, filed February 14th 1876, for work as mechanics for said Elmores from May 14th to November 19th, 1878, amounting to $546.45.

The defendant Holt further alleges that on the 24th day of February, 1872, Alexander and Adaline J. Elmore executed to Charles H. Williams a mortgage upon the property described

in plaintiff's petition to secure $3,500, which mortgage has been duly assigned to the defendant and that there is now unpaid thereon the sum of $500.

This defendant further alleges that on the 8th day of November, 1877, Farnham & Lovejoy filed a mechanic's lien for material furnished to Otis Pray, then and now the owner of the water-power mill and improvements situated on the property described in plaintiff's petition for material furnished to erect a dam and mill on said property between July 19th and September 29th, 1877, amounting to $1,275.88, which claim has been duly assigned to the defendant. This defendant further alleges that about June 19th, 1871, Alexander and Adaline J. Elmore executed to N. B. Lord a mortgage upon the property described in plaintiff's petition to secure the sum of $2,000, which mortgage has been duly assigned to the defendant, and that there is due thereon the sum of $237.08.

This defendant further alleges that he is the owner by assignment of the chattel mortgage to secure the sum of $5,000 hereafter referred to in the answer of Otis A. Pray.

This defendant further alleges that on the 24th day of November, 1875, the defendants Elmores executed to Otis A. Pray a mortgage upon the real estate described in the plaintiff's petition, to secure the payment of $6,000, and that said mortgage is the property of defendant by assignment. The defendant Holt alleges that all these claims are prior to the lien of plaintiff. The plaintiff filed an answer to the cross-petition of Holt alleging that the several claims therein set forth have been fully paid and extinguished and merged in the title of the defendant Otis A. Pray in said premises, and that the assignments were taken in Holt's name fraudulently, for the purpose of defrauding plaintiff and other holders of liens against said property.

The cause was tried to the court upon written evidence. The court entered a judgment and decree as follows:

" 1.    That there is due on note and mortgage on property described in plaintiff's petition, made June 16th, 1871, to N. B. Lord, $471.49, with interest from July 15th, 1878, and $25 attorney fee.

" 2.   That there is due on note and mortgage made on said property February 24th, 1872, by the Elmores to Charles H. Williams, $608.22, with interest at ten per cent per annum from July 15th, 1878, and $25 attorney fee.

" 3.   That there is due on note and mortgage made May 1, 1875, by defendants, on said property, to the Union Bank of Cedar Rapids, $2,329.84, with interest at ten per cent per annum from July 15th, 1878, and $85 attorney fee.

" 4.   That certain notes were given to O. A. Pray by defendant Elmore, and there is due thereon $6,354.70, with interest at ten per cent from July 15th, 1878, and $100 attorney fee. That November 24th 1875, defendants gave to said Pray a mortgage on said real property, and to further secure the payment of said notes, finds that on same day defendants Elmores made a chattel mortgage on certain machinery which was afterwards placed in the mill situated on said real estate, and which constituted the machinery of said mill.

" 5.   That June 21st, 1875, a judgment was rendered in favor of James Leffell & Co. against defendants Elmores in the District Court of Floyd county, Iowa, and a mechanic's lien enforced against the water wheel of said mill situated on said real property, and that there is due thereon $655.41, with interest at ten per cent from July 15th, 1878.

" 6.   That during the summer of 1875 a mill was erected on the said real property, and that on the 25th day of February, 1876, Farnham & Lovejoy filed a mechanic's lien against said mill for materials furnished therefor, and the court enforces the same in the sum of $2,296.66, with interest at six per cent from July 15, 1878.

" 7.   That J. S. & A. G. Merrill filed a mechanic's lien February 9th, 1876, against said mill for work done thereon, and the court enforces said lien in the sum of $619.26, with interest at six per cent from July 15th, 1878.

" 8.   That William Brunton filed a mechanic's lien March 4th, 1876, against said mill for work done thereon, and the court enforces said lien in the sum of $86.68, with interest at six per cent from July 15th, 1878.

" 9.   That Wm. J. Little filed a mechanic's lien against said

mill for work done thereon, and the court enforces said lien in the sum of $88.78, with interest at six per cent from July 15th, 1878.

"10. That November 8th, 1877, Farnham & Lovejoy filed a mechanic's lien on said mill and real estate upon which it was built, to secure an indebtedness from O. A. Pray, then the owner in fee of said mill and realty, for materials furnished in the erection of a new dam thereon, and the court enforces said lien in the sum of $1298.67, with interest at six per cent from July 15th, 1878.

"11. That the evidence fails to establish that plaintiff's mortgage was made for a pre-existing debt, and it must be held to be *ultra vires* and void. That as no personal service was had on defendants Elmores in this state by plaintiff, and no appearance by them, no personal judgment can be rendered against either of them on plaintiff's notes, and hence plaintiff's petition must be dismissed.

"12. That defendant C. E. Holt is the owner of the above claims and indebtedness originally due to N. B. Lord, C. H. Williams, O. A. Pray, James Leffell & Co., J. S. & A. G. Merrill, Wm. Brunton, Wm. J. Little and Farnham & Lovejoy, and that such claims have been properly assigned to him.

"13. That the mortgage made to N. B. Lord is the first lien on the real estate, but subject to mechanic's liens on the mill and the chattel mortgage on the machinery. That the mortgage to C. H. Williams is the second lien on the real estate, subject to same as above. That the judgment in favor of Jas. Leffell & Co. is the first lien on the water wheel in said mill, the third lien on the real estate, subject to liens on mill and machinery as above. That the mechanic's lien filed by Farnham & Lovejoy, February 26th, 1876, is the first lien on the mill and the fourth lien on the real estate, subject to mortgage on machinery. That the mortgage of the Union Bank is the fifth lien on the real estate, subject to liens on mill and machinery as above. That the mechanic's lien of J. S. & A. G. Merrill is the sixth lien on the real estate, second lien on the mill, subject to liens on the water wheel and machinery. That the mechanic's lien of Wm. Brunton is the

seventh lien on said real estate and third lien on the mill, subject to liens on water wheel and machinery. That the mechanic's lien of Wm. J. Little is the eighth lien on said real estate and fourth lien on the mill, subject to liens on water wheel and machinery. That the mortgage made by defendants Elmores to O. A. Pray, November 24th, 1875, is the ninth lien on the real estate, subject to liens on the mill and machinery. That the chattel mortgage executed by Elmores to said Pray on the machinery is the first lien on the machinery described in said chattel mortgage. That the mechanic's lien of Farnham & Lovejoy against O. A. Pray, filed November 8th, 1877, is a lien on said mill and real estate, subject to the liens hereinbefore specified. That the defendant C. E. Holt is entitled to a foreclosure of the mortgage hereinbefore described, as prayed, against the defendants hereinbefore set forth, and that the same relief be extended to the Union Bank of Cedar Rapids; that the mechanic's liens be established in the order and priority as hereinbefore set forth.

"Judgment in favor of cross-petitioner C. E. Holt against defendants Elmores for $11,181.20 and $150 attorney fee, with interest from July 15th, 1878, at six per cent on $3091.38, and ten per cent on $8089.82, with costs; and in favor of the Union Bank against defendants Elmores for $2329.84, with interest at ten per cent per annum from July 15th, 1878, and $85 attorney fee and costs.

"Decree, that the interest of the other defendants in and to said real estate be barred and foreclosed; and further decreed, that an account or appraisement be made of the value of the improvements made by the mechanics, of the value of the machinery placed in the mill upon which the chattel mortgage exists, of the value of the realty upon which no mechanic's liens or chattel mortgages have been decreed. That then a special execution issue, and the said property be sold thereunder, as an entirety, to satisfy said judgments, interest and costs, and the proceeds of said sale to be divided between, or set apart, such a proportion to the water wheel, to the machinery, to the mill building and to the realty and appurtenances, aside from the wheel, mill building and machinery, in proportion

to their respective values, and the liens upon each interest. Real estate mortgage, mechanic's and chattel mortgage liens to be paid according to their priority, and the balance, if any, to be applied to the payment of the mechanic's lien filed against the property in favor of Farnham & Lovejoy against O. A. Pray, which is made the junior and subsequent lien.

To all of which findings, judgment and decree plaintiff excepts."

The plaintiff, and the defendant, the Union Bank of Cedar Rapids, appeal.    The parties stipulated that the following questions, only, should be submitted to and determined by this court:

" 1.    Whether the mortgage of the plaintiff sued on herein is *ultra vires*, or illegal or void, in whole or in part, for any cause, or whether valid in whole or in part.

" 2.    If said mortgage shall be found to be valid, in whole or in part, its relation to, or priority to, the liens of the defendants.

" 3. . Whether the decree of the court directing the sale of the whole property, building, ground and real estate as an entirety, and directing an appraisement of the value of the improvements made by the mechanics and material men on the mill, and of the machinery placed in the mill, and of the realty, and division of the proceeds of the sale of said property in proportion to the values so ascertained, among the lien holders, in the order of their priority found by the court, be legal or equitable as against plaintiff, and defendant, the Union Bank.

" 4.    Whether the purchase by defendants Holt and Pray, of the equity of redemption of said property from Elmores, while holding mortgages and liens thereon, and subsequently purchasing in other liens, worked a merger of their liens so as to displace and postpone them to the liens of the plaintiff and the Union Bank, and, if such merger be found, that the relation and priority of the liens of plaintiff and defendants shall be established and determined."

*Alford & Elwell*, attorneys for plaintiff.

*J. S. Root*, attorney for defendant C. E. Holt.

*A. M. Harrison*, attorney for O. A. Pray and Leffell & Co.

*Geo. F. Boulton* and *West & Eastman*, attorneys for Union Bank of Cedar Rapids.

DAY, J.—I. Is the plaintiff's mortgage *ultra vires*, and void under section 5136, Rev. Statutes U. S. This question 1. MORTGAGE: has recently been determined by the Supreme validity: national bank. Court of the United States, in *The Union National Bank of St. Louis v. Matthews*, 8 Otto (98 U. S.) 621.

In that case an injunction was obtained in the state court of Missouri, restraining the bank from proceeding to sell under a deed of trust executed to the bank in security for a loan of $15,000. Upon writ of error to the Supreme Court of the United States the judgment of the state court was reversed. In the course of the opinion, respecting the defense that the trust deed was taken in violation of the banking act, and was void, the court say; "We cannot believe it was meant that stockholders, and perhaps depositors, and other creditors should be punished, and the borrower rewarded, by giving success to this defense whenever the offensive fact shall occur. The impending danger of a judgment of ouster and dissolution was, we think, the check, and none other, contemplated by Congress. That has been always the punishment prescribed for the wanton violation of a charter, and it may be made to follow, whenever the proper public authority shall see fit to make its application. A private person cannot, directly or indirectly, usurp this function of the government."

As the question under consideration arises under a statute of the United States, this decision of the United States Supreme Court is authoritative and binding upon us, and is conclusive of the validity of the mortgage in question, as between the parties thereto.

II. As to the relation of the plaintiff's mortgage to the liens of the other defendants:

1. The mortgage to N. B. Lord bears date June 16, 1871, the mortgage to Charles H. Williams bears date February 24,

1872; the judgment in favor of James Leffel & Co. was recovered June 21, 1875, but the action was commenced September 2, 1874, to enforce a mechanic's lien theretofore filed. These claims all have precedence to the plaintiff's mortgage, which was executed December 1, 1874. The note for $500 secured by the mortgage bears the same date as the mortgage. The note for $213.80 is dated May 3, 1875, but the debt for which it was given was created December 10, 1874. This mortgage, for the amount of both notes, attaches as the junior lien upon the real estate.

2. It is conceded by the plaintiff that if the mechanic's liens have not become merged in the superior estates of the defendants Pray and Holt, and the mill is found to be such independent structure as can be removed, the three claims above named, as well as the four mechanic's liens mentioned in the sixth, seventh, eighth and ninth paragraphs of the court's findings, are prior to the lien of plaintiff's judgment on the mill. These questions are hereinafter considered.

III. The mill structure upon which these mechanic's liens are claimed was erected in the summer of 1875, subsequent to the date of the mortgage to plaintiff. It is claimed by the plaintiff that the mill building is not such an independent structure as is susceptible of removal, under the doctrine of *Getchel v. Allen*, 34 Iowa, 559, and the cases following it, and that, therefore, the mortgage attaches to the building and takes precedence of the mechanic's liens thereon, and is the fourth lien upon the mill building, as well as upon the balance of the realty. We think, however, the evidence shows the mill building to be such independent structure as may be removed. It is a frame building, and may, we think, as appears from the weight of the evidence, be removed without material detriment to the realty.

IV. The defendant Holt is the owner of the claims set forth in the twelfth paragraph of the court's finding of facts. One
2. ——: MER-
GER: pur-
chase of legal
title.
U. A. Wilson, having procured a conveyance from Elmore and wife of an undivided half of the property set forth in the petition, on the 24th day of October, 1876, conveyed it to Holt, and on the 27th day of

the same month Holt conveyed said interest to Pray. On the 17th day of October, 1876, Elmore and wife quit-claimed the property described in the petition to Pray, and on the 27th of June, 1877, they executed to him a deed of special warranty for an undivided half thereof. It is now urged by the plaintiff, that the liens, or some of them, now held by the defendant Holt have become merged in the legal titles conveyed to Pray and Holt, and cannot be enforced. It is claimed further by the defendant, the Union Bank of Cedar Rapids, that the defendant Holt is not entitled to a prior lien upon the machinery by virtue of the chattel mortgage executed to Pray, November 24th, 1875, and by Pray assigned to Holt. It is insisted that the purchase by Pray of the real property and the conveyances to him caused a merger of the chattel mortgage on machinery with the legal title to the real estate, and that the mortgage cannot now be enforced. In *Wilhelmi v. Leonard*, 13 Iowa, 330 (338), it was held that when a mortgagee purchases the equity of redemption the whole estate is vested in him and the mortgage is extinguished, unless intention or interest in the mortgagee intervenes to prevent the merger. See, also, to the same effect, *Wickersham v. Reeves & Miller*, 1 Iowa, 413; *Gibson v. Cushon*, 3 Pick., 475. It was clearly not to the interest of either Pray or Holt that their liens should become merged in the legal title. A merger of these liens in the legal title would postpone the claims of Pray and Holt to the prior mortgages upon the realty. It cannot be supposed that they intended such a result. It is urged further, in the argument on behalf of the Union Bank of Cedar Rapids, that when Holt sold Pray an undivided half of the property he conveyed by warranty in the usual form, and cannot now be allowed to enforce these liens against his grantee. That is a matter solely between Holt and Pray, and one with which the Union Bank of Cedar Rapids has no concern.

V. It is further claimed that the machinery, upon being placed in the mill, became a part of the realty, and that the right to enforce the chattel mortgage against it was thereby lost. The plaintiff cites *Bringholff v. Munzenmaier*, 20 Iowa, 513; *Winslow v. Insurance Com-.*

*pany*, 4 Met., 306; *Richardson v. Copeland*, 6 Gray, 536, and *Cross v. Marston*, 6 Gray, 536.

The case of *Bringholff v. Munzenmaier* holds that fixtures so attached to the realty by the owner as to become a part of it, between vendor and vendee, pass to the vendee free of the lien of a prior mortgage thereon of which the vendee had no notice. The case of *Winslow v. The Merchant's Insurance Company* holds that fixtures, and additions in the nature of fixtures, which are placed in a building by a mortgagor, after he has mortgaged it, become part of the realty as between him and the mortgagee, and cannot be removed or otherwise disposed of by him while the mortgage is in force. In *Richardson v. Copeland* it is held that a steam engine set upon a granite block, and a boiler set in bricks in such manner that it cannot be removed without taking down the brick, and both used for running machinery in an adjoining shop, became a part of the realty, and a mortgage thereof as personal property, executed contemporaneously with the bill of sale from the vendor, but after the engine and boiler have been put in operation, passes no title in them as against a subsequent purchaser of the real estate, though with notice of the mortgage. The principle upon which this case is decided is, that a mortgage of the engine and boiler as personal property, after they had been attached to and had become a part of the realty, is void. In *Cross v. Marston*, 17 Vt., 533, it was held simply that a case of drawers and the sash of a show case placed in the building of another and fastened in their places with nails, did not, under the circumstances of the case, become part of the realty so as to pass to a subsequent purchaser of the building. We regard all these cases as essentially different from the case at bar. No question of notice between mortgagee and vendee is involved. The chattel mortgage upon this machinery was executed before it was placed in the mill, and hence the right to mortgage it as personal property is clear. The evidence shows that there is but one place where the machinery is connected with the main frame in the building, and that is in the basement, where a box is bolted to one of the frame timbers for the shafting to run in. The ma-

First National Bank of Waterloo v. Elmore.

chinery can be removed without material injury to the main building. The case falls more nearly within the principle of *Evans v. Estes*, 10 Kansas, 314, than within the doctrine of the cases cited by plaintiff. In our opinion the chattel mortgage upon the machinery in the mill is valid and may be enforced.

VI. All the mechanic's liens except that of Farnham & Lovejoy were filed prior to the taking effect of chapter 100, laws of the Sixteenth General Assembly. The court erred in decreeing that the property be sold as an entirety, and that the proceeds be apportioned to the mill building and to the realty in proportion to their respective values and the liens upon each interest. See *Brodt v. Rohkar*, 48 Iowa, 36; *Conrad & Ewinger v. Starr*, 50 Iowa, 470. These liens can be enforced only in the manner provided in the Revision, which is a sale and removal of the building to satisfy the liens upon it, unless the holders of mortgages upon the real estate shall prevent the removal by buying in the liens upon the building.

*4. MECHANIC'S liens: manner of enforcing.*

The several liens are confirmed in the order of precedence named by the court, except that the mortgage to plaintiff shall be established as the fourth lien upon the real estate, subject to the liens specified on the mill and machinery. The chattel mortgage will be enforced against the machinery in the mill, the mechanic's liens against the mill structure, and the mortgages against the whole property subject to the chattel mortgage and the several mechanic's liens, each lien being satisfied in the order of its priority. The cause will be remanded to the court below for a decree in harmony with these views.

REVERSED.