In re SUNFLOWER STATE REFINING CO.

NATIONAL BANK OF COMMERCE OF KANSAS CITY, MO., et al. v. CARBONDALE MACH. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 13, 1912.)

No. 3,647.

1. FIXTURES (§ 20*)—PRIORITIES—CONDITIONAL SALES—PRIOR MORTGAGE CONTAINING AFTER-ACQUIRED PROPERTY CLAUSE.

In the absence of any agreement as between the vendor in a conditional sale of personal property and the bondholders or mortgagees of the purchaser under a prior mortgage containing an after-acquired property clause, the true test for determining whether or not the lien of the conditional sale vendor is inferior to the lien of the mortgagee is whether the personal property has been so attached to the real estate mortgaged as to become a part of the realty.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 44-46; Dec. Dig. § 20.*]

2. FIXTURES (§ 20*)—CONDITIONAL SALES—PRIOR MORTGAGE CONTAINING AFTER-ACQUIRED PROPERTY CLAUSE.

Bankrupt, which was an oil refining company, purchased from claimant certain machinery to equip a plant for treating a by-product. Claimant installed the machinery in a building constructed for the purpose, and it was attached to the cement floor by bolts. It was furnished under a conditional sale contract reserving title in claimant until fully paid

for, and providing that it should remain personalty, which contract was recorded, and, under Gen. St. Kan. 1909, § 5237, became valid as a chattel mortgage, which remained in force until full payment of the purchase price. The machinery could be removed without injury to the real estate, or to the remainder of the plant. *Held* that, under such statutory provision and the express agreement of the parties, the machinery remained personalty and claimant's lien thereon was superior to that of a prior mortgage given by the bankrupt to secure bonds and containing an after-acquired property clause, which under the law of the state was ineffective as a chattel mortgage upon after-acquired property.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 41–46; Dec. Dig. § 20.*]

Appeal from the District Court of the United States for the District of Kansas.

In the matter of the Sunflower State Refining Company, bankrupt. From an order permitting the Carbondale Machine Company to reclaim certain property, the National Bank of Commerce of Kansas City, Mo., and others appeal. Affirmed.

Maurice H. Winger (Arthur Miller, Karnes, New & Krauthoff, and J. C. Petherbridge, on the brief), for appellants.

W. E. Ziegler (J. W. Dana, on the brief), for appellees.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

CARLAND, Circuit Judge. The Sunflower State Refining Company was incorporated under the laws of the territory of Arizona May 16, 1905. On May 22, 1905, by authority of its board of directors, said corporation executed a first deed of trust on all of its property, which was filed for record May 22, 1905, in the office of the register of deeds of Chautauqua county, Kan., where the property of the company was located. Said trust deed was given to secure the payment of the principal and interest of $125,000 of the bonds of said company of the tenor and effect set forth in the deed of trust. The trust deed, after describing the real estate conveyed, contained the following provision:

"And all the buildings, machinery, engines, boilers, implements, pipe lines, oil tank cars, tank wagons, and all iron and steel tanks at all distributing stations, and all property, real, personal and mixed, now owned or hereafter to be acquired by the said party of the first part that may appertain to or be used in connection with said business, wherever situated."

On June 9, 1909, by authority of the stockholders, the directors reorganized the corporation as a Kansas corporation, and the Kansas corporation passed a resolution accepting the property, real and personal, of the Arizona corporation, subject to all claims and indebtedness of whatsoever kind and nature, and agreeing to carry out in every particular all the contracts of the former company.

On October 12, 1909, both the Arizona corporation and the Kansas corporation were adjudged bankrupts by the United States District Court for the District of Kansas. As the Kansas corporation, under the name of the Sunflower State Refining Company, became possessed of all the property of the Arizona corporation, and assumed

its debts and liabilities, it will be referred to hereafter in this opinion as the bankrupt.

December 31, 1910, the United States District Court for the District of Kansas adjudged that the National Bank of Commerce of Kansas City, Mo., had a valid claim against the estate of the bankrupt in the sum of $50,100, and that the bank was the legal holder of bonds issued under said trust deed in the aggregate value of $60,-000, as collateral security for the debt due said bank. It was also adjudged that the Pittsburg Crude Oil & Gas Company had a valid claim against the bankrupt in the sum of $1,520, and that said company was the owner of bonds issued under said deed of trust in the aggregate value of $1,500, as collateral security for the said indebtedness.

September 17, 1908, the Carbondale Machine Company, a corporation of Carbondale, Pa., entered into a written contract of sale with the bankrupt, whereby it agreed to place on the premises of the said bankrupt at Niotaze, Chautauqua county, Kan., certain machinery known as a wax distillate, chilling press plant, refrigerator plant, filter press plant, pumping plant, hard wax press equipment, generators, exchanger, rectifier, condenser, brine cooler, absorber, ammonia pump, pipe fittings, and gauges, together with other machinery and equipment used in connection therewith, for the sum of $26,000. The contract of sale contained the following provision:

"The property called for and furnished under the terms of these specifications and contract shall be, and remain, personal property, and the title and ownership thereto shall remain in this contractor until the full and final payment therefor shall have been made by the owner, according to the terms agreed upon, and any notes shall have matured and been settled in full, and the taking of any security shall not operate as a waiver or as otherwise affecting this reservation of title. In case of default in any of the payments provided for, this contractor may take the above mentioned property wherever found, and shall not be liable in any action at law on the part of said purchaser for such reclamation of said property, nor for the repayment of any money or moneys which may have been paid by said purchaser in part payment for such property. Nothing in these specifications or the contract made therein contained shall in any way impair the provisions of this article as to ownership."

On December 31, 1910, the Carbondale Machine Company filed an application for an order directing the trustee in bankruptcy to deliver to it the property described in the contract of sale between it and the bankrupt, and which it had placed on the premises of the bankrupt, as described in the trust deed. The National Bank of Commerce and the Pittsburg Crude Oil & Gas Company filed objections to the allowance of the application of the Carbondale Machine Company, claiming that they were the owners of bonds secured by the trust deed, and that, by virtue of the after-acquired property clause in the trust deed, they possessed a first lien on the property placed upon the premises of the bankrupt by the Carbondale Machine Company pursuant to the contract of September 17, 1908. Subsequently the United States District Court for the District of Kansas held a hearing at which oral evidence was introduced in behalf of the bondholders, and in behalf of the Carbondale Machine Company,

and said court, after hearing the evidence, made the following findings:

(1) That the purchase-money notes of the Carbondale Machine Company were executed and delivered for the purchase price of certain machinery sold by it to the bankrupt in accordance with a contract which reserved the title in the seller, Carbondale Machine Company, until said machinery should be paid for, and it was stipulated and agreed between the bankrupt and the seller, Carbondale Machine Company, that said property should remain personal property.

(2) The court further finds that said property was installed in a building which was designed by the Carbondale Machine Company and built in accordance with the specifications prepared and furnished by the Carbondale Machine Company for the express purpose of receiving the machinery so sold and delivered to the bankrupt by said Carbondale Machine Company, and that said machinery was installed in said building and was attached by means of bolts imbedded in the cement floor of said building, and that said machinery was so installed in said building by the seller, Carbondale Machine Company.

(3) The court further finds that said machinery has not been fully paid for by the bankrupt, and that it can be removed without injury to the realty, and that the seller, Carbondale Machine Company, as between itself and the holders of the bonds secured by a mortgage as above set forth, did not relinquish its title to said machinery, and that the petitioner, Carbondale Machine Company, is entitled to an order permitting it to remove said machinery from the plant of the bankrupt company.

(4) The court further finds that the contract for the purchase of said machinery was dated September 9, 1908, and that said machinery was installed in said building between that date and the ———— day of ————, 1909, and that the contract between the bankrupt and the Carbondale Machine Company was filed for record in the office of the register of deeds of Chautauqua county, Kan., on the 12th day of April, 1909, at 9 o'clock a. m., and is recorded in book No. L of chattel mortgages in and for said county.

(5) The court further finds that on the 22d day of May, 1905, the bankrupt executed a trust deed on all the property the bankrupt then owned, and all the property it might thereafter acquire in connection with its plant, to secure an issue of bonds in the total aggregate face value of $125,000; that said trust deed was filed for record in the office of the register of deeds of Chautauqua county, Kan., on the 22d day of May, 1905, and recorded in Book 24, at page 415, and following, and that the machinery of the Carbondale Machine Company was installed in a building built on a part of the real estate covered by said trust deed.

On the same day, upon such findings, the following order was made:

"Wherefore, it is ordered, adjudged, and decreed by the court that the title to the machinery mentioned and described in the petition of the Carbondale Machine Company is in said company, and said machinery is the property of the Carbondale Machine Company, and that the Carbondale Machine Company be, and is, hereby authorized to remove said machinery from the plant of the bankrupt company at such time and in such manner as may be hereafter ordered and directed by this court, the court reserving the right to remove said machinery sold free and clear of the claim of the Carbondale Company, and, if so sold, the lien of Carbondale Machine Company shall attach to the proceeds of the sale of said machinery. Provided always any creditor or other party in interest as purchaser or otherwise may satisfy and discharge the lien of the Carbondale Machine Company by making payment of its claim of purchase price unpaid and interest thereon as may and will on application for that purpose be adjudged and determined by this court."

The findings above set out were not excepted to, and must be accepted as true. The order above mentioned is the one from which the appellants appeal. The question of law presented is whether

upon the facts found and conceded the right of the Carbondale Machine Company under the ownership clause of its contract is superior to the lien of the bondholders under the after-acquired property clause of the trust deed.

An examination of the authorities satisfies us that no general rule can be cited which can be applied to the decision of all cases similar to the one now under consideration. The correct decision of each case as it shall arise must depend upon the particular facts existing therein. The business of the bankrupt was the refining of crude petroleum. The machinery sold to the bankrupt by the Carbondale Machine Company consisted of a plant for the making of wax as a by-product of the general business of refining oil.

The trust deed was not a chattel mortgage, and was never recorded as such, nor is there any claim made by counsel for the appellants that it ever was a chattel mortgage. The claim, if made, could hardly be maintained on account of the laws and decisions of Kansas in regard to the validity of chattel mortgages upon after-acquired property. If the property of the Carbondale Machine Company ever became subject to the lien of the trust deed, it is because such property was so attached to the real estate described therein as to become a part thereof. Whether it was so attached depends upon the manner of its attachment, the character of the property itself, and the intention of the parties to the contract of sale.

The property itself was personal property, beyond question, prior to its being placed upon the real estate. The parties to the contract of sale never intended that it should become a part of the realty because they specifically contracted and agreed that it should not. The findings of the trial court describe how the property was placed upon the real estate, and that court also found that the same could be removed therefrom without injury to the realty. Under section 5237, General Statutes of Kansas, a conditional sale of personal property when recorded as therein provided becomes and remains a chattel mortgage until the purchase price is paid.

In the case of U. S. v. New Orleans Railroad, 12 Wall. 362, 20 L. Ed. 434, there was a controversy between bondholders secured by a mortgage covering after-acquired property and the United States as vendor of two locomotives and ten cars. At the time of the sale by the United States to the railroad of the locomotives and cars it was stipulated that the United States should have a lien upon the property sold for the purchase money. The Supreme Court, in deciding the case, said:

"The appellants contend, in the next place, that the decision upon the facts was erroneous; that the mortgages, being prior in date to the bond given for the purchase-money of these locomotives and cars, and being expressly made to include after-acquired property, attached to the property as soon as it was purchased, and displaced any junior lien. This, we apprehend, is an erroneous view of the doctrine by which after-acquired property is made to serve the uses of a mortgage. The doctrine is intended to subserve the purposes of justice, and not injustice. Such an application of it as sought by the appellants would often result in gross injustice. A mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands. If the property is

already subject to mortgage or other liens, the general mortgage does not displace them, though they may be junior to it in point of time. It only attaches to such interest as the mortgagor acquires; and, if he purchase property and give a mortgage for the purchase money, the deed which he receives and the mortgage which he gives are regarded as one transaction, and no general lien impending over him, whether in the shape of a general mortgage, or judgment, or recognizance, can displace such mortgage for purchase money. And in such cases a failure to register the mortgage for purchase money makes no difference. It does not come within the reason of the registry laws. These laws are intended for the protection of subsequent, not prior, purchasers and creditors.

"Had the property sold by the government to the railroad company been rails, as in the case of the Galveston Railroad Company v. Cowdrey [11 Wall. 459, 20 L. Ed. 199], or any other material which became affixed to and a part of the principal thing, the result would have been different. But, being loose property, susceptible of separate ownership and separate liens, such liens, if binding on the railroad company itself, are unaffected by a prior general mortgage given by the company, and paramount thereto. In the case before us, the United States, at the time of making the sale, reserved a lien on the property, and imposed a condition of nonalienation until the price should be paid. Taken all together, the transaction amounts to a transfer sub modo, and the lien must be regarded as attaching to the property itself, and as paramount to any other liens arising from the prior act of the company."

Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, was a contest between the trustee under a mortgage given to secure the payment of bonds and which contained an after-acquired property clause, and the vendor of railway cars. In deciding this case the Supreme Court said:

"They (the mortgagees) are in no sense purchasers of the cars. The mortgage attaches to the cars, if it attaches at all, because they are 'after-acquired' property of the company; but, as to that class of property, it is well settled that, the lien attaches subject to all the conditions with which it is incumbered when it comes into the hands of the mortgagor. The mortgagees take just such an interest in the property as the mortgagor acquired; no more, no less. These cars were 'loose property susceptible of separate ownership and separate liens' and 'such liens, if binding on the railroad company itself', are unaffected by a prior general mortgage given by the company and paramount thereto.' United States v. New Orleans Railroad, 12 Wall. 362 [20 L. Ed. 434]. The title of the mortgagees in this case, therefore, is subject to all the rights of Schall under his contract."

The case of Meyer v. Car Company, 102 U. S. 1, 26 L. Ed. 59, is to the same effect.

On the other hand, in Galveston Railroad v. Cowdrey, 11 Wall. 459, 20 L. Ed. 199, it was held that where one furnishes rails to be used in the construction of a railroad, and allows them to go into and become a part of the road, they are covered by the mortgage executed by the railroad company upon its property, and he has no lien which can displace it. In this case the Supreme Court said:

"Rails put down on the company's road become a part of the road. The road itself was included in the mortgage of the complainant. Pulsford, by allowing his property to go into and become a part of the road, consented to its being covered by the mortgage in question."

The rule announced in the case last cited was followed in Thompson v. Valley Railroad Company, 132 U. S. 68, 10 Sup. Ct. 29, 33 L.

Ed. 256. In the case of Porter v. Pittsburg Steel Company, 122 U. S. 267, 7 Sup. Ct. 1206, 30 L. Ed. 1210, the Supreme Court said:

"The bridges became a part of the permanent structure of the railroad, as much as the rails laid upon the bridges or upon the railroad outside of the bridges. Whatever is the rule applicable to locomotives and cars, the loose property susceptible of separate ownership and of separate liens, and to real estate not used for railroad purposes, as to their being unaffected by a prior mortgage given by a railroad company, covering after-acquired property, it is well settled, in the decisions of this court, that rails and other articles which become affixed to and a part of a railroad covered by a prior mortgage will be held by the lien of such mortgage in favor of bona fide creditors, as against a contract between the furnisher of the property and the railroad company, containing stipulations like those in the contracts in the present case. Dunham v. Railway Co., 1 Wall. 254 [17 L. Ed. 584]; Galveston Railroad v. Cowdrey, 11 Wall. 459, 480, 482 [20 L. Ed. 199]; United States v. New Orleans Railroad, 12 Wall. 362, 365 [20 L. Ed. 434]; Dillon v. Barnard, 21 Wall. 430, 440 [22 L. Ed. 673]; Fosdick v. Schall, 99 U. S. 235, 251 [25 L. Ed. 339]."

[1, 2] It is unnecessary to cite and review the numerous decisions of the state and lower federal courts upon the questions here involved. While the cases decided by the Supreme Court of the United States have been in regard to railroads, we think it may not be doubted that, in the absence of any agreement as between the vendor in a conditional sale of personal property and the bondholders or mortgagees under a mortgage having an after-acquired property clause, the true test for determining whether or not the lien of the conditional sale of the vendor is inferior to the lien of the mortgagee is whether the personal property has been so attached to the real estate mortgaged as to become a part of the realty. Whether the machinery sold to the bankrupt by the Carbondale Machine Company became real estate by its being placed upon the real estate described in the trust deed must be determined by the local law of Kansas, if any such law can be found.

Section 5237, General Statutes of Kansas, hereinbefore referred to, is as follows:

"No. 5237. Sale Notes. No. 44—That any and all instruments in writing or promissory notes now in existence or hereafter executed evidencing the conditional sales of personal property, and that retain the title to the same in the vendor until the purchase price is paid in full, shall be void as against innocent purchasers, or the creditors of the vendee, unless the original instrument, or a true copy thereof, shall have been deposited in the office of the register of deeds of the county wherein the property shall be kept, and shall be entered upon the records of the same as a chattel mortgage, and when so deposited shall remain in full force and effect until the amount of the same is fully paid, without the renewal of the. same by the vendor; and any conditional verbal sale of personal property reserving to the vendor any title in the property sold shall be void as to creditors and innocent purchasers for value."

By virtue of this positive law of Kansas the conditional sale contract executed by and between the Carbondale Machine Company and the bankrupt when recorded became a valid chattel mortgage and continues to remain so in full force and effect until the amount of the same is fully paid. Therefore it can be truly said that the law of Kansas regarded the property described in the conditional sale as personal property both before and after it was placed upon the

real estate. We have, then, the law of Kansas treating it as personal property, the specific contract and agreement between the Carbondale Machine Company and the bankrupt that the property was and should continue to be considered as personal property, the fact that it was property which could be removed from its place upon the real estate without injury thereto, and the further fact that the character of the property was not such as to charge the Carbondale Machine Company with the knowledge that, if placed upon the real estate in question, it would necessarily, having in view the business in which the bankrupt was engaged, become a part of the real estate.

The property was not like rails furnished to a railroad to be placed upon ties imbedded in the railroad right of way and there to remain until worn out, and which are absolutely necessary to be used in connection with the operation of the railroad, nor was the property like steel furnished to a railroad company to be used in the building of a bridge, which bridge was as much a part of the railroad as the rails and roadbed itself. The fastening of the property to the foundations by bolts was for the purpose of causing the same to be in a fixed place so that the machinery could be operated, but this mode of fastening was not such as to charge the Carbondale Machine Company with the knowledge that such machinery became a part of the realty and absolutely necessary to the use of said real estate for the purposes for which the bankrupt was operating its refinery.

Another fact must not be lost sight of, and that is that the balance due the Carbondale Machine Company was about $17,500, with interest, which would be lost to it if it should be held that the property sold by it to the bankrupt had become real estate subject to the lien of the mortgagee. The Supreme Court said, in the language hereinbefore quoted from U. S. v. New Orleans Railroad, supra, that the doctrine by which after-acquired property is made to serve the uses of the mortgage was intended to subserve the purposes of justice, and not injustice. We are of the opinion, therefore, that upon the facts conceded and found by the trial court the decree below was right and must be affirmed.