C. H. COMLY, Appellant, v. GEORGE LEHMANN et al., Appellees.

HALLER OVEN COMPANY, Appellee, v. GEORGE LEHMANN, Defendant;
C. H. COMLY, Intervenor, Appellant.

No. 42374.

MARCH 13, 1934.

REHEARING DENIED SEPTEMBER 18, 1934.

Mallory & Leming, and W. W. White, for appellant C. H. Comly.

Peisen & Soper, for appellee Haller Oven Co.

C. E. Gilchrist, for appellee C. E. Burton Plumbing & Heating Co.

KINTZINGER, J.—On March 8, 1926, the defendant Lehmann, as owner of the real estate, executed a note secured by a mortgage to one Claude H. Koon, who later assigned it to plaintiff herein. The note and mortgage became due in 1931, but was extended for a period of five years. On nonpayment of later interest when due, the note was declared due and this action was brought to foreclose the mortgage. When the mortgage was executed the owner was conducting a bakery business in the building on the premises. At that time the building was equipped with two bake ovens and two boilers, connected with the building.

In March, 1929, the defendant mortgagor purchased from the appellee Haller Oven Company, and installed in the mortgaged building, an elaborate oven costing $8,680 on which there is still due about $2,500. About the same time he also purchased a large boiler from the Burton Plumbing & Heating Company costing nearly $1,000 on which there is still due about $200. The old ovens and boiler in the building were removed at that time.

Separate actions were commenced to foreclose the mortgage, and for repossessing the oven and boiler sold under conditional sales contracts. These actions were, by agreement of the parties, tried together.

The new oven was built up on the concrete floor of the bakery building, and was connected with the steam boiler pipes, with the gas pipes, and with the electric power connections in the building. The oven weighed about 22,000 pounds and was built upon steel plates laid on the floor.

The boiler weighed about 2,900 pounds and was set up in a boiler room in the building, and connected with the bake oven to furnish steam for baking purposes, and with several radiators to furnish heat for the building. The front of the boiler rested on the concrete floor and the rear on a pier built under it.

The oven and boiler were sold under conditional sales contracts reserving the title and possession in the vendors until fully

paid. These contracts were not recorded until December, 1931. The machines in question were installed after the execution of the real estate mortgage and without the knowledge or consent of the plaintiff or the original mortgagee.

The question for determination in this case is whether or not the machines in question, after their installation, became fixtures and part of the real estate, or remained personal property subject to repossession by the vendors under their conditional sales contract.

I. The first question for consideration is whether or not, under ordinary conditions and without a conditional sales contract, the oven and boiler in question, after being installed, would constitute fixtures and become part of the real estate.

Considering first the character of the boiler, we find that it was installed in a boiler room in the basement. The front of it was set on the cement floor and the rear part on a pier built in to support it. The boiler is connected with several radiators providing heat for the building, and is also connected with the new Haller oven, to furnish steam for baking. It is also connected with other machinery, and is used in connection with the operation of the bakery business. Its removal would prevent the owner from operating the bakery without substituting another boiler. Before the present boiler was installed, there was a small boiler and some stoves in the building used for the business. These were removed on the installation of the new boiler. The pipes from the boiler are used in the bakery business and for heating the building. There are numerous pipes connected with the main pipes leading in the boiler. The boiler is too large to be taken out of the boiler room without tearing down some of the wall. The boiler cannot be taken out of the door because the building is not wide enough to turn it. The boiler might be tipped, but if taken through the door it would be jarred to pieces. It is the law in this state that a furnace attached to a concrete floor becomes a fixture as between vendor of the land and the seller of the furnace. Des Moines Improvement Co. v. Holland Furnace Co., 204 Iowa 274, 212 N. W. 551; Holland Furnace Co. v. Pope, 204 Iowa 737, 215 N. W. 943; Joyce Lumber Co. v. Wick, 200 Iowa 796, 205 N. W. 476; Schoeneman Lumber Co. v. Davis, 200 Iowa 873, 205 N. W. 502; West v. Farmers Mutual Ins. Co., 117 Iowa 147, 90 N. W. 523; State Security Bank v. Hoskins, 130 Iowa 339, 106 N. W. 764, 8 L. R. A. (N. S.) 376; Ilten & Taege v. Pfister,

202 Iowa 833, 211 N. W. 407. We believe that the boiler in question became such an integral part of the building as to become a fixture and part of the realty.

The evidence in relation to the oven shows that prior to its installation the building was used for the bakery business. At that time it was equipped with two bake ovens, a boiler, and other machines necessary for the operation of a bakery business. That two old ovens were removed when the new one was installed. The new oven was built up from and set upon a concrete foundation, and weighs 22,000 pounds. The foundation upon which it was built was leveled up with cement and other material connecting the oven with the floor. After being installed, it was covered with wire mesh and insulating material, so that when completed it had the appearance of being part of the building. It is contended that because the skeleton part of the oven was built upon iron or steel plates, without being attached by bolts to the foundation, and because it could be dismantled piece by piece, it was portable and did not become part of the building or a fixture. The building itself could be dismantled and removed from its foundation in the same manner, but that would make it none the less a part of the realty. In view of the enormous weight of the oven, it is immaterial that the bottom plates were not attached to the foundation by means of bolts. The force of gravity would hold this 22,000-pound oven in place as effectively as if fastened with many bolts. 26 C. J. 661, section 10, and numerous cases cited under note 83; Thomson v. Smith, 111 Iowa 718, 83 N. W. 789; 50 L. R. A. 780, 82 Am. St. Rep. 541; Boon v. Orr, 4 G. Greene 304; Smith v. Carroll, 4 G. Greene 146.

This rule has been applied in many cases to buildings resting on timbers, blocks, or stones. Fences merely resting on the surface of the ground, heavy machinery (Hooven Co. v. Featherstone's Sons, 111 F. 81, 49 C. C. A. 229), large scales, millstones and large bells suspended from a frame, furnaces, and ice boxes. 26 C. J. 661.

The evidence also shows that when this oven was installed it was too large for the room in which it was built, and, it became necessary to remove part of the ceiling in the room so that the oven extended up through the ceiling to a point near the roof. The building itself was a frame, and it is fair to say, although the evidence is not clear on that point, that the new oven built was heavier, and more substantial, than the building itself. It was built into the building as a permanent structure for the purpose of the bakery business

conducted by the owner. When the oven and boiler were installed, he intended them to be permanent annexations to his real estate. It is our conclusion that from the construction of the oven, with all of its connections with the machinery and other parts of the building, it was of such a permanent character as to become an integral part of the building and therefore took on the character of real estate. We think this conclusion must be reached in the light of the furnace and other cases hereinabove cited. In view of the law announced in the furnace cases hereinabove cited, supra, we believe that under ordinary conditions and without considering the effect of any conditional sales contract, the oven and boiler in question must be considered fixtures, an integral part of the building, and therefore part of the real estate.

II. It is claimed, however, that where personal property is sold under a conditional sales contract with a provision that it shall remain the property of the vendor until paid, it will retain its character of personal property, if the removal thereof would not materially reduce or injure the security of a prior mortgagee of the realty.

This rule is supported by the greater weight of authority, and an agreement that an article attached to the realty shall be removable and remain personalty is ordinarily given full effect as against a prior mortgagee, in so far as it will not interfere with the security of such mortgage. 26 C. J. 684, section 49; Beatrice Creamery Co. v. Sylvester, 65 Colo. 569, 179 P. 154, 13 A. L. R. 441 and note. Waterloo First National Bank v. Elmore, 52 Iowa 541, 3 N. W. 547; Detroit Steel Co. v. Sisterville Brewing Co., 233 U. S. 712, 34 S. Ct. 753, 58 L. Ed. 1166; Ratchford v. Cayuga County Cold Storage, 217 N. Y. 565, 112 N. E. 447, L. R. A. 1916E, 615; Fitzgibbons Boiler Co. v. Manhasset Realty Corp, 198 N. Y. 517, 92 N. E. 1084; Davis v. Bliss, 187 N. Y. 77, 79 N. E. 851, 10 L. R. A. (N. S.) 458; Blanchard v. Eureka Planing Mill Co., 58 Or. 37, 113 P. 55, 37 L. R. A. (N. S.) 133; Campbell v. Roddy, 44 N. J. Eq. 244, 14 A. 279, 6 Am. St. Rep. 889. This rule is well expressed in Campbell v. Roddy, supra, where the court said:

"It is true that by force of the annexation they would become subjected to the lien of the real estate mortgage absolutely, unless the lien of the chattel mortgagee intervenes. * * * The real estate mortgagee had no assurance at the time he took his mortgage that

there would be any accession to the mortgaged property. He may have believed that there would be such an accession, but he obtained no right, by the terms of his mortgage, to a lien upon anything but the property as it was conditioned at the time of its execution. * * * So long therefore as he is secured the full amount of the indemnity which he took, he has no ground for complaint. There is therefore no inequity towards the prior real estate mortgagee * * * in protecting the lien * * * *so far as it will not diminish the original security of the former."* (Italics ours.)

It will be noticed, however, that this rule is based upon the fact that the fixture can be removed without any material injury to the mortgagee.

It is also the general rule of law that where personal property, sold under a conditional sales contract, has become so intimately connected with or embodied in real estate, subject to a prior mortgage, that it would more or less disintegrate the real estate covered by the mortgage and reduce the security given thereby, the reservation of title is ineffectual to preserve the rights of the seller as against the rights of the prior mortgagee of the realty.

The rule is that in order to retain its character as personal property, and in order to justify a superior right in the vendor under a conditional sales contract, it must appear that the removal thereof from the real estate would not materially injure the security of the prior mortgagee. Detroit Steel Cooperage Co. v. Sisterville Brewing Co., 233 U. S. 712, 34 S. Ct. 753, 58 L. Ed. 1166; In re Sunflower State Ref. Co. (C. C. A.) 195 F. 180; U. S. v. New Orleans & O. R. Co. (New Orleans & O. R. Co. v. Mellen), 12 Wall. 362, 20 L. Ed. 434; Westinghouse Electric Co. v. Citizens Street R. Co. (Ky.) 68 S. W. 463; Porter v. Pittsburgh Bessemer Steel Co., 122 U. S. 267, 7 S. Ct. 1206, 30 L. Ed. 1210; Union Trust Co. v. Southern Sawmills & Lumber Co., 166 F. 193, 92 C. C. A. 101.

The evidence in this case shows that before the installation of the new boiler, the building was equipped with two boilers and two old ovens. These were removed on the installation of the new oven and boiler. Whatever the condition of the old boilers and oil ovens may have been, the removal of the present boiler and oven would leave the building without any boiler or oven. The pipes leading from the boiler were connected to the oven and radi-

ators in other parts of the building. If these were removed, the integral character of the building as a bakery would be destroyed.

Considering a similar question in Ilten & Taege v. Pfister, 202 Iowa 833, loc. cit. 836, 211 N. W. 407, this court, in an opinion written by Justice Stevens, says:

"The furnace became an integral part of the building. * * * The pipes were inclosed between the studding and the radiators installed in the floors or partitions on the second floor. The old furnace was removed and taken away by appellants. The evidence tends to show that it was in bad condition, but the removal of the present one would leave the building without any furnace. It is possible that the furnace proper might be removed without serious damage to the building, but, if this were done, the integral character of the improvement would be destroyed, and the radiators at least left to mar the rooms in which they have been placed."

In Des Moines Improvement Co. v. Holland Furnace Co., 204 Iowa 274, loc. cit. 276, 212 N. W. 551, we said:

"The contract between Hedgecock and the appellant provided: 'The furnace and piping in basement shall remain personal property at all times, and the title thereto shall remain in us until final payment therefor, with the right in us to remove same in default of payment.' There is no evidence that the appellant had notice of the terms and provisions of the contract for the sale of the real estate, and, on the other hand, appellee had no notice of the terms and conditions of the contract for the purchase and installation of the furnace. What, then, are the respective rights of the parties in this situation? In Ilten & Taege v. Pfister [supra], 202 Iowa 833, 211 N. W. 407, there was a contract for the sale of real estate, which did not contemplate the purchase and installation of a furnace in the property. After such contract was made, the plaintiff in the action sold a furnace to the purchaser of the real estate and installed the same upon the premises. The purchaser of the real estate failed to pay the purchase price of the furnace, and a mechanic's lien was duly filed therefor. * * * We held that a mechanic's lien of the seller of the furnace was at all times inferior and junior to the lien of the vendor of the real estate. The cited case involved a mechanic's lien, but the underlying principle is the same. The vendor of the real estate had a paramount and superior

claim upon the real estate for the balance due him on his purchase price. He held the title as security for said purchase price. In the instant case, the appellant, by the installation of the furnace in question, made the same an integral part of the realty. The appellee's rights under his contract attached to it the same as to any other portion of the realty. The appellant, when it installed the furnace in the manner in which it was done, was bound to know as a matter of law that the furnace thus became an integral part of the realty. Whatever rights it may have had under this contract with Hedgecock, the purchaser of the furnace, and which it might have enforced as against him, are not available to the appellant as against the appellee, who was the holder of the legal title to the realty, and who had a superior and paramount lien upon all of it for the payment of the purchase price of the real estate. * * * Upon the record in this case we hold that, as between the appellant and the appellee, the installation of the furnace, making it a permanent fixture and an integral part of the real estate, without the knowledge or consent, express or implied, of the appellee, deprives the appellant of the right to remove said furnace from the said building, notwithstanding the terms and provisions of the contract between the appellant and his purchaser, Hedgecock. * * * As bearing somewhat upon the question herein involved, see Hunt Hdw. Co. v. Herzoff, 196 Iowa 715, 195 N. W. 264; O'Bryon v. Weatherly, 201 Iowa 190, 206 N. W. 828."

As supporting this doctrine, see, also, Holland Furnace Co. v. Pope, 204 Iowa 737, 215 N. W. 943; Joyce Lumber Co. v. Wick, 200 Iowa 796, 205 N. W. 476; Schoeneman Lumber Co. v. Davis, 200 Iowa 873, 205 N. W. 502; West v. Farmers Mutual Ins. Co., 117 Iowa 147, 90 N. W. 523; State Security Bank v. Hoskins, 130 Iowa 339, 106 N. W. 764, 8 L. R. A. (N. S.) 376; Ilten & Taege v. Pfister, 202 Iowa 833, 211 N. W. 407; Barbour Plumbing, Heating & E. Co. v. Ewing, 16 Ala. App. 280, 77 So. 430; Allis-Chalmers Co. v. City of Atlantic, 164 Iowa 8, 144 N. W. 346, 52 L. R. A. (N. S.) 561, Ann. Cas. 1916D 910.

In Allis-Chalmers Co. v. City of Atlantic, supra, loc. cit. 15, we said:

"In Hopewell Mills Co. v. Taunton Savings Bank, 150 Mass. 519, 23 N. E. 327, 6. L. R. A. 249, 15 Am. St. Rep. 235, it was held that when machinery was furnished for the manufacture of cotton

cloth, and was placed in a mill already subject to mortgage, it became realty as against the mortgagor and his grantees, when it was heavy, not intended to be removed, but fastened in position to be used until worn out. This rule is recognized and adopted in Thomson v. Smith, 111 Iowa 718, 83 N. W. 789, 50 L. R. A. 780, 82 Am. St. Rep. 541, as applied to wagon scales, which were a part of the realty."

In Holland Furnace Co. v. Pope, supra, a conditional sales contract for fixtures installed in a building under a contract with a vendee of real estate on the land contract could not be enforced as against the rights of the vendor of the real estate.

We can see no difference in principle between the rights of the vendor of the real estate in the Des Moines Improvement Co. v. Holland Furnace Co. case, supra, and the mortgagee in the case at bar. It is claimed, however, that under the equitable doctrine announced in many cases, the conditional vendor has, under certain circumstances, a superior right thereto.

In the cases adopting this rule, however, it is said that whether the vendor or holder of a chattel mortgage has a greater right than the prior mortgagee of the real estate *depends upon the inquiry whether or not the preservation of the right of the chattel mortgage will impair or diminish the security of the prior real estate mortgage as it was when he took it.* If it will not, then it would be inequitable for the mortgagee of the real estate to defeat or destroy the rights of the vendor or holder of the chattel mortgage. If it will impair such security, then it is the misfortune of the holder of the chattel mortgage that he permitted the property to be annexed to a freehold from which it cannot be removed without diminishing or impairing the security of an existing mortgage thereon. Binkley v. Forkner, 117 Ind. 176, 19 N. E. 753, 3 L. R. A. 33.

In Bass Foundry Works v. Gallentine, 99 Ind. 525, the court said:

"The old machinery was subject to the mortgage; the mortgagor could not substitute new for old, and compel the mortgagee purchasing at the foreclosure sale to take the mill in a dismantled condition, because of a contract made by the mortgagor with some third person, to which the mortgagee was not a party, to which he never consented, and of which he had no notice."

We reach the conclusion that the boiler and oven as installed constituted fixtures and became and were parts of the realty. Plaintiff's mortgage was secured by a building equipped with machinery for conducting a bakery business. The boilers and ovens, in the building when his mortgage was executed, were removed without his knowledge or consent when the new machinery was installed. The boilers and ovens then used in the bakery business constituted some of the essential features of the security of his mortgage. Such security could not be removed without the knowledge and consent of the mortgagee. If the vendors' rights under their conditional sales contracts be established in this case, the building would be left without any machinery for conducting a bakery business. It necessarily follows that the security of appellant's mortgage would therefore be materially injured by the removal of the new boiler and oven. These fixtures could not be removed without materially injuring the premises.

Appellee filed a motion to dismiss appellant's appeal. It is apparent from an examination of the motion and the resistance thereto that the appellant has not parted with his interest in the property in question. The most that can be claimed, therefore, is that appellant gave defendant Lehmann's wife an option to purchase the real estate involved up to and including March 1, 1937. This option has not been exercised. It is therefore our conclusion that the appellant, Comly, is still interested in this case. The motion to dismiss is overruled.

It is therefore our finding that plaintiff's mortgage is superior to the rights of the Haller Oven Company and C. E. Burton Plumbing & Heating Company under their conditional sales contracts.

The decree of the lower court is reversed, and the case is remanded for a decree in harmony herewith.—Reversed and remanded.

CLAUSSEN, C. J., and ANDERSON, STEVENS, KINDIG, and DONEGAN, JJ., concur.